**Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL UNION 262, GLASS BOTTLE BLOWERS ASSOCIATION OF the UNITED STATES AND CANADA, Defendant.**

**No. 44741.**

United States District Court
N. D. California.

Aug. 26, 1968.

Robert Ensign, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Donald Carroll, San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION

PECKHAM, District Judge.

The Secretary of Labor brought this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter referred to as the Act), 29 U.S.C. § 401 et seq., to set aside an election of officers and to order a new election under the Secretary's supervision. The defendant is an unincorporated association maintaining its principal office in San Jose, California and is a local labor organization engaged in an industry affecting commerce within the meaning of Sections 3(i), 3(j), and 401(b) of the Act. Defendant is chartered by and sub-

ject to the Constitution of the Glass Bottle Blowers Association of the United States and Canada, AFL–CIO. All members of the defendant union are employees of the Owens Corning Fibreglass Corporation, Santa Clara, California. The challenged election was held by defendant on September 24, 1965, to elect a president, vice president, recording secretary, secretary-treasurer, inner guard, outside guard, and three trustees, to serve three-year terms. The election was conducted pursuant to the defendant's by-laws which provided:

> No member may be a candidate unless said member is in good standing and has attended seventy-five percent (75%) of the regular Local meetings each year, since the last Local election. Article III, Section 5.

> In cases where members have to work at the time of meetings, or having sickness, accident (excuse from doctor, nurse or foreman) and so notify the Recording Secretary, they shall be marked present at such meetings, provided they notify the Secretary in writing seventy-two (72) hours following the meeting. Article III, Section 6.

At the time of the nomination meeting on August 27, 1965, the defendant had 568 members. Ten members, including eight incumbent or former officers, were eligible to hold office under the defendant's by-laws. All ten of these members appeared on the ballot, with two running for president and the other eight running uncontested for the remaining offices. The final vote count in the election for president was 146 to 142 in favor of the incumbent.

The Secretary of Labor urges the Court to declare the challenged election void on two grounds. First, it is contended that the meeting attendance requirement was an unreasonable qualification on the union members' rights to be candidates for office, thus violating Section 401(e) of the Act, 29 U.S.C. § 481 (e).[1] Second, it is contended that the use

---

1. "In any election required by this section which is to be held by secret ballot    a reasonable opportunity shall be given for the nomination of candidates and

of absentee ballots was conducted without adequate safeguards in distribution, handling, and counting, in violation of Section 401(c) of the Act, 29 U.S.C. § 481(c),[2] and without notice of the availability of absentee ballots, in violation of Section 401(e) of the Act, 29 U.S.C. § 481(e). The Court agrees with the Secretary on both grounds and holds that these violations may have affected the outcome of the challenged election for president, as well as the outcome of the entire election, thus rendering the election void under Section 402(c) of the Act, 29 U.S.C. § 482(c).[3]

## I

■ The legislative history of Title IV of the Act shows that Congress weighed how best to legislate against abuses in union elections without unnecessary departure from the long-standing policy against unwarranted governmental intrusion into internal union affairs. Wirtz v. Local 153, Glass Bottle Blowers Assn., 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed. 2d 705 (1968). The provisions of Section 401 of the Act are necessary protections of the public interest as well as of the rights and interests of union members. Wirtz v. Local 125, Laborers' Int'l. Union, 389 U.S. 477, 88 S.Ct. 639, 19 L. Ed.2d 716 (1968). Whether a bylaw is a "reasonable qualification" within the meaning of Section 401(e) must be measured in terms of its consistency with the Act's command to unions to conduct "free and democratic" union elections. Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968).

In holding the 75% meeting requirement qualification to be unreasonable, the Court has considered the percentage of attendance required, the frequency of meetings held, the period of time involved, the allowances for excused absences, and the effects of the requirement. The Glass Bottle Blowers Association is the only major national union requiring attendance at a rate as high as 75% in order to qualify for nomination as an officer. The qualification is buttressed by the additional requirement that 75% of the meetings be attended in *each year* since the last Local election. The effect of this requirement was to disqualify 98.4% of the union membership from eligibility to run for office. The only excused absences allowed were illness, accident, or having to work at the time of meetings, provided written notification was made to the Secretary within seventy-two hours following the meeting.

■ The Union urges that the attendance requirement exists to encourage attendance at meetings by the rank and file membership. Although this purpose is laudatory, it does not serve as a sufficient basis for sustaining the qualification as a reasonable one. In view of the fact that 98.4% of the membership has not attended meetings at the required rate, it is reasonable to conclude that the candidacy restriction has not served this purpose. The Local itself does not display faith in the success of this requirement as it affords an additional incentive of pecuniary compensation that is not available to the other members, to officers who attend meetings. The Court holds that the highly-restrictive meeting attendance qualification imposed here, is not a reasonable means of achieving the

every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) * * *. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. * * *"

2. "Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots."

3. "If, upon a preponderance of the evidence after a trial upon the merits, the court finds * * * that the violation of section 481 of this title may have affected the outcome of an election, the court shall declare the election, if any, to be void * * *."

legitimate end of encouraging meeting attendance.

The union further contends that members must be familiar with the workings and problems of the union before assuming union office and that this familiarity can be accomplished by requiring 75% meeting attendance to qualify for office. Unlike the purpose discussed previously, it is questionable whether this purpose is a legitimate one, for it assumes that union members are unable to apply good judgment in the nomination and election processes. This assumption is contrary to the principles underlying democratic elections as they are conducted in this country. Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). Even if the Court were to accept the union's argument that the exposure to and familiarity with union workings and problems is a necessary qualification to hold union office, requiring attendance at 75% of the meetings every year is an unreasonable means of achieving this purpose.

■ Two nominees for office were disqualified as candidates under the meeting attendance requirement, and three other members who could not have met the requirement declined nomination to run in the challenged election. Over 98% of the union's membership did not meet the qualification. The defendant having failed to introduce any convincing evidence to the contrary, the Court concludes that the violation of Section 401(e) of the Act may have affected the outcome of the defendant's 1965 election.

## II

■■ There are no provisions for absentee voting in the union's constitution or bylaws. Notice of the challenged 1965 election was sent to the members without mention of the availability of absentee voting. Absentee voting had been permitted in the union's previous elections and a notice to that effect had been posted on a bulletin board before the 1962 election. No steps were taken to advise members that absentee ballots would be available in the 1965 election. As a result, some members were aware of the availability of absentee voting and many others were not. The Court holds that failure to inform all the members of the availability of absentee voting was a violation of Section 401(e) of the Act. Although the Act does not require that absentee voting be allowed, once the union made it available, notice of its availability was required within the meaning of Section 401(e) of the Act.

■ During the challenged election, six absentee ballots were distributed to members by James Giacobelli, the incumbent president who was a successful candidate for re-election. These were the only absentee ballots distributed for the 1965 election. When each of the six absentee voters approached Mr. Giacobelli at his place of work for absentee ballots, the voter was handed a register, a blank ballot, and an envelope. The voter then signed the register, marked the ballot, and placed it in an envelope and returned the register to Mr. Giacobelli. The voter was then instructed to mail the envelope which was addressed to the union. Six envelopes containing marked ballots were received by the union. There was no information on the envelopes or ballots which substantiated that these ballots were in fact the ones marked by those who signed the register. These absentee ballots were not commingled with the other ballots and were counted after all the other ballots were tallied. There was no accounting for the number of blank ballots Mr. Giacobelli had for distribution and no record of the number he returned to the union. These circumstances surrounding the distribution, handling and counting of absentee ballots violated Section 401(c) of the Act which requires "adequate safeguards to insure a fair election."

■ At the time of the challenged election, Local 262 had 568 members, of whom only 289 voted. The contest for president was decided in favor of the incumbent Mr. Giacobelli by four votes. More than four members who did not vote

may have voted had the availability of absentee ballots been known to them. Since the decisive margin was four votes, the counting of six absentee votes in favor of the successful incumbent clearly had an effect on the election of president. Thus, the violations of Section 401(c) and (e) may have affected the outcome of the election for president of Local 262.

Accordingly, the Secretary of Labor is entitled to judgment declaring the Local's 1965 election void and an order that a new election be held under the Secretary's supervision. Findings, Conclusions, and proposed judgment are to be prepared by plaintiff.