Ray MARSHALL, Secretary of Labor, Plaintiff-Appellant,

v.

PROVISION HOUSE WORKERS UNION, LOCAL 274, AMALGAMATED MEAT CUTTER AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, Defendant-Appellee,

Silverio Rivas, Rosalva Coronel and Leo Flores, Interveners.

No. 77–2876.

United States Court of Appeals, Ninth Circuit.

March 4, 1980.

As Ordered March 20, 1980.

As Modified March 24, 1980.

As Amended June 19, 1980.

Leonard Schaitman, argued, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Lawrence Rosenzweig, Levy & Goldman, argued, Los Angeles, Cal., for defendant-appellee.

Before GOODWIN, WALLACE and SKOPIL, Circuit Judges.

PER CURIAM

The Secretary of Labor appeals the summary judgment for the defendant union in his action to set aside the results of a local union election for violations of section 401(c) of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 481(c). We affirm.

On November 27, 1974, the Provision House Workers Local 274 held its nomination meeting for local union elections, to be held on January 25, 1975. At this meeting, before nominations were accepted, the union's executive secretary read a set of proposed rules governing the conduct of the forthcoming elections. The meeting was noisy; it was difficult to hear the secretary's reading; and several union members who spoke Spanish could not understand the reading in English. The rules were adopted, however, without discussion, by voice vote.

The election rules included a provision that any candidate who wished the union to distribute his or her campaign literature must file a request for distribution with the union's secretary-treasurer within ten days after the nomination meeting. The purpose of this rule, which had not been imposed in previous elections, was to give the union's management sufficient lead time to make arrangements for handling mailing requests before the election.

Among the union members who attended the nomination meeting were Silverio Rivas, Gabriel Gastelum, and Rosalva Coronel ("the challengers"). Rivas, Gastelum, and Coronel were nominated and campaigned for union office as members of an "anti-incumbent" slate. Each of these candidates requested that the union distribute campaign materials, and the union denied these

requests as untimely under the "ten-day rule."

Rivas and Coronel wrote to the local requesting copies of the election rules on November 28, the day after the nomination meeting. The union's executive secretary received these requests on December 2 and responded to them on December 4. The candidates, including Gastelum, received their copies of the rules on December 7. Rivas and Gastelum both immediately requested union distribution of literature in letters received by the union on December 10 and December 11, respectively, 13 and 14 days after the nomination meeting, three and four days after the ten-day deadline. Coronel requested distribution in a letter received on December 27, twenty days after the deadline. The union denied each of these requests as untimely.

Rivas and Gastelum, after the denial of their distribution requests, also asked the union to provide them with a list of employers having collective bargaining agreements with the union. The union denied this request. No incumbent candidate requested union distribution of campaign materials or sought to obtain lists of union employers.

The incumbent slate defeated the challengers by large margins in the election of January 25, 1975. After protesting the fairness of the election and exhausting union post-election remedies, the challengers filed complaints with the Secretary of Labor under 29 U.S.C. § 482. The Secretary subsequently filed this action, seeking to set aside the election results, and Rivas, Coronel, and Leo Flores, a candidate who cooperated with their slate, were granted leave to intervene as plaintiffs. The district court granted summary judgment for Local 274, finding that the union had not breached its duty to distribute campaign materials

and that the union was not required to provide candidates with lists of union employers. The appeal challenges both points.

In relevant part, 29 U.S.C. § 481(c) provides that "every local labor organization, and its officers, shall be under a duty * * to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of [any] such person's candidacy to all members in good standing of such labor organization * * *." The Secretary contends that Local 274 violated this section by denying the challengers' requests for distribution that were made after the ten-day deadline imposed by the union's election rules.

The district court made a finding of fact that the union "did not fail to comply with reasonable requests [by Rivas, Gastelum, and Coronel] to distribute by mail campaign literature in aid of their candidacies * *." If, viewing the evidence in the light most favorable to the challengers, this fact was not reasonably in dispute, then the union was entitled to judgment as a matter of law and we must affirm.

Neither the legislative history of the Labor Management Reporting and Disclosure Act [1] nor the academic commentary on that act [2] defines a standard of "reasonableness" in this context. The Supreme Court has, however, considered the meaning of the term "reasonable qualifications" under § 481(e) and found that "reasonableness" in that context must be "measured in terms of * * * consistency with the Act's command to unions to conduct 'free and democratic' union elections." *Steelworkers v. Usery,* 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977), quoting with approval, *Wirtz v. Hotel Employees,* 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763

1. *Legislative History of the Labor Management Reporting and Disclosure Act of 1959* (1959 ed.).

2. *See, e. g.,* Cox, *Internal Affairs of Labor Unions Under the Labor Reform Act of 1959,* 58 Mich.L.Rev. 819, 844 (1960); Note, *Union Elections and the LMRDA: Thirteen Years of Use and Abuse,* 81 Yale L.J. 407, 457 (1972) (recognizing that the definition of "reasonable" is the crucial question under § 481(c), but offering no guidance in developing such a definition).

(1968). Because rules governing distribution of campaign materials, like qualifications for candidacy, implicate the fairness of union elections, Local 274's failure to mail the challengers' literature should be tested against the *Hotel Employees* standards. *See Marshall v. Local 478, Laborers' Int'l*, 461 F.Supp. 185, 188–90 (S.D.Fla. 1978).

The Secretary, while not contending that the union's ten-day rule is not per se unreasonable, contends that its application in these circumstances unreasonably limited Local 274's distribution duty under 29 U.S.C. § 481(c). Because the rule was applied unreasonably, the Secretary argues, distribution requests that did not satisfy the rule were not necessarily unreasonable.[3]

The Secretary asserts that the union's enforcement of the ten-day rule was unreasonable in three respects. First, because the rule had not been previously imposed and because conditions at the nomination meeting prevented candidates from understanding the reading of the rules, the challengers were effectively without notice of the ten-day requirement. Second, once the challengers learned of the new rule, they attempted to comply with it. Rivas and Gastelum mailed written requests for distribution of campaign materials immediately after receiving copies of the election rules on December 7, the union's deadline date under the ten-day rule for receiving such requests. The Secretary contends, finally, that the union's enforcement of the rule was unnecessary, that Local 274 could have complied with distribution requests received six weeks before the election without compromising the administrative lead time justifications for the ten-day rule.

These arguments, and the factual evidence presented to support them, do not persuade us that a factual dispute was raised as to the reasonableness of the denials. Nor do they dissuade us that, as a matter of law, Local 274, consistent with considerations of union democracy, did not fail to comply with reasonable requests for the distribution of campaign materials.

The challengers may not have had perfect notice of the ten-day rule. Nevertheless, the trial court received credible evidence that this ignorance was attributable to the challengers' inattention to the nomination meeting rather than to any failure of the union to adequately communicate the election requirements. Indeed, the union, by announcing the ten-day rule at the nomination meeting, was complying with the Department of Labor's regulations governing union elections. *See* 29 U.S.C. § 452.67.[4]

The Secretary's second contention, that the challengers made every effort to satisfy the ten-day rule, is similarly unconvincing. The challengers' attempts to comply with the deadline date are immaterial if their own negligence caused the initial noncompliance. Furthermore, the record demonstrates that, although the challengers received copies of the election rules on the tenth day after the nomination meeting and could have satisfied the ten-day rule by personally delivering their requests for distribution to the union secretary on the same day, they chose, instead, to mail their requests which, consequently, arrived after the deadline date.[5]

Finally, contrary to the Secretary's assertions, enforcement of the ten-day rule

**3.** The district court might have found that the challengers' requests were unreasonable for reasons other than the violation of the ten-day rule, but nothing in the record supports such an assumption.

**4.** 29 C.F.R. § 452.67 reads, in relevant part, as follows:

"In order to avoid charges of disparity of treatment among candidates, it is advised that a union inform all candidates in advance of the conditions under which distribution will be made and promptly advise them of any change in those conditions."

**5.** The Secretary's reliance on *Marshall v. Local 478, Laborers' International*, 461 F.Supp. 185 (S.D.Fla.1978) is misplaced. In that case, the union refused to comply with all distribution requests, stating that its office staff was too busy with its regular work to assist any candidate. Here, Local 274 was willing to comply with any distribution request that did not vio-

may have been necessary. Making exceptions to the rule, by complying with the challengers' late distribution requests, could have undercut the purpose of the election rules—to eliminate the potential for discrimination among candidates by establishing a uniform set of standards governing all candidates. Candidates challenging incumbent union officers normally expect to do some homework and to comply with rules. We conclude that the district court could properly find that, because strict enforcement of the ten-day rule was necessary, distribution requests violating that requirement were unreasonable and the union had no duty to comply with them.

The Secretary next contends that the union further violated § 481(c) by refusing to provide the challengers with lists of union employers. This argument is advanced on two levels. First, because the union refused to mail the candidates' materials, it incurred an affirmative obligation to help them distribute campaign literature in another fashion—directly, at job sites. The Secretary also argues that the union, by refusing to furnish employer lists, was discriminating against the nonincumbent candidates because the incumbents had access to those lists.

■ These arguments would expand 29 U.S.C. § 481(c) beyond its plain meaning. The section defines candidates' rights to membership lists very narrowly: each candidate has the right to inspect a list of union members' names and addresses once within thirty days of an election. There is no statutory right to obtain a list of union employers. A nonstatutory right is not lightly to be inferred. The legislative history of the LMRDA demonstrates a congressional intent that the use of membership lists be severely limited and that such lists be kept out of the hands of partisans in

union campaigns to avoid coercion of members. *See Legislative History of Labor Management Reporting and Disclosure Act of 1959*, 1240–41 (1959 ed.); Note, *Union Elections and the LMRDA: Thirteen Years of Use and Abuse*, 81 Yale L.J. 407, 457 (1972). *But cf.* Note, *supra*, at 457 n. 227 (criticizing congressional purposes in limiting use of lists). The same policies apply to employer lists.

The Secretary's contention that a right to employer lists was recognized in *Schultz v. Radio Officers' Union*, 344 F.Supp. 58 (S.D. N.Y.1972), is inapposite. There, many of the union's members were at sea for long periods, and the only way members could be contacted was through mailings to their "employer's address," the ship. The court found that candidates had no general right to the ship's lists, but that, because use of the lists would afford a candidate a distinct advantage over opponents, once one candidate used the lists, all candidates must be given copies. *Id.* at 68–69. *Schultz*, then, was an anti-discrimination case.

■ Here, while the union incumbents had access to the office and thus to employer lists, there is no evidence that they made campaign use of the lists.[6] Because unequal access alone does not warrant a finding of "discrimination * * * with respect to the use of lists of members," there was no violation of § 481(c). *See Schultz v. Radio Officers' Union, supra*, at 69; *Wirtz v. American Guild of Variety Artists*, 267 F.Supp. 527, 543 (S.D.N.Y.1967).

The district court's judgment is affirmed.

---

late its campaign rules. The record before us supports the conclusion that the challengers could have satisfied these rules, including the ten-day requirement, but failed to do so because of their own negligence.

**6.** The incumbent candidates did distribute slate cards at job sites but did so only at locations where the challengers had already campaigned.