Ray MARSHALL, Secretary of Labor, United States, Department of Labor, Plaintiff-Appellant,

v.

LOCAL 468, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Independent, Defendant-Appellee.

No. 78–3582.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 14, 1980.

Decided Dec. 15, 1980.

Rehearing Denied March 16, 1981.

As Amended March 30, 1981.

Wendy M. Keats, Washington, D. C., argued for plaintiff-appellant; Robert E. Kopp, Linda M. Cole, Dept. of Justice, Washington, D. C., on brief.

Kenneth N. Silbert, Brundage, Beeson, Tayer & Kovach, San Francisco, Cal., for defendant-appellee.

Before WALLACE and ALARCON, Circuit Judges, and VON DER HEYDT *, District Judge.

VON DER HEYDT, District Judge:

The Secretary of Labor appeals from an order granting summary judgment to the defendant, Local 468, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Independent, charged with a violation of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq. We hold that the Union violated 29 U.S.C. § 481(c)[1] and remand to the District Court for trial on the question of whether the proven violation "may have affected the outcome of an election" and thus requires that the earlier election be voided and that a new supervised election be conducted. 29 U.S.C. § 482(c).[2]

---

* Honorable James A. von der Heydt, Chief United States District Judge for the District of Alaska, sitting by designation.

1. Title 29 United States Code § 481(c) provides: "(c) Every national or international labor organization, except a federation of national or international labor organizations, and every local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution. Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in which he is candidate, to inspect a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof. Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots."

2. Title 29 U.S.C. § 482(c) provides in pertinent part:
"(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—
(1) that an election has not been held within the time prescribed by section 481 of this title, or

Prior to the 1976 election, the candidates for union office were nominated at a special meeting and elected by members casting ballots in person at least thirty days later.

On July 25, 1976, during a special nominating meeting, the Executive Board of the Union first announced an unspecified change in the balloting procedures for the August, 1976 election. On July 30, 1976, ballots were mailed to the membership of the Union. The accompanying instructions informed the members that they could return their ballots at any time within thirty days, but admonished the members to "vote immediately."

The Secretary of Labor brought this action charging that the defendant local had violated the LMRDA by failing to provide "[a]dequate safeguards to insure a fair election," 29 U.S.C. § 481(c), and that the election should be voided and a new supervised election held since the above violations "may have affected the outcome" of the election. 29 U.S.C. § 482(c). The Secretary did not question the fairness of an election by mail-in ballot; rather he urged that the advance notice of the change in balloting procedure was insufficient to enable the candidates to conduct meaningful campaigns.

■ While there are no statutory requirements establishing the length of campaign periods, the importance of campaigning is statutorily recognized. 29 U.S.C. § 481(c). The abrupt change in balloting procedure constituted a statutory violation.

In past elections, the candidates had customarily enjoyed a thirty day period between the nomination meeting and the balloting in which to campaign. Yet only five days after announcing an unspecified change in balloting procedures the union local mailed ballots to the membership.

The lack of opportunity to send out campaign literature immediately before the election may have severely hampered the challengers' prospects. The incumbents, and their policies and practices, were already known to the Union members. Those wishing to challenge the incumbent office holders might be relatively unknown, for whom the opportunity to make their abilities and views known to the electorate would be crucial to any hope of success. Here, however, the nominees learned of the mailing schedule only by receiving their own ballots in the mail. By that time, circulation of campaign literature would have been a futile act.

■ The Union argues that under the new system there were at least 30 days between the nomination meeting and the ballot due date, as well as 26 days between the mailing of the ballots and the date by which they had to be returned. The Union contends, therefore, that any change in procedures could not have hampered the campaign efforts of the challengers.

This argument ignores the practical effect of the change. Despite the fact that the intervals noted above existed, the abrupt change in voting procedures effectively deprived the challengers of the opportunity to use this time to reach the voters. Under the previous system, the members could not cast their vote *until* the 30th day following nominations. Under the new system, the members could cast their vote as soon as their ballot arrived, which they were urged to do. Votes could have been cast as soon as two days after the ballots were mailed on July 30th. While nothing is wrong with this latter procedure in itself, the change from the former system to the latter without prior notification to the challengers allowing them time to prepare and mail their campaign literature deprived them of the ability to more fully communicate with the voters.

The Secretary has established a violation of 29 U.S.C. § 481(c). The Supreme Court has held that a proven violation of § 481

(2) that the violation of section 481 of this title may have affected the outcome of an election,
the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization . . ."

establishes a *prima facie* case that the violation "may have affected the outcome of the election." *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 506–07, 88 S.Ct. 1743, 1751–52, 20 L.Ed.2d 763 (1968). The union may, of course, overcome such a showing by introducing evidence to the contrary. *Id.* at 507, 88 S.Ct. at 1752.

In the present case, the question of whether the proven violation of § 481 "may have affected the outcome" of the election, and thus requires a new supervised election, is not susceptible to determination by summary judgment. The District Court must decide the factual question whether or not there was a reasonable expectation on the part of the candidates to be able to rely on the customary thirty day campaign period, and what the effect of such an expectation was upon the election.

Reversed and remanded for further proceedings.