772 F.2d 905
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WILLIAM E. BROCK, SECRETARY OF LABOR, UNITED STATES
DEPARTMENT OF LABOR, UNITED STATES OF AMERICA,
PLAINTIFF-APPELLANT,
v.
DISTRICT 6, UNITED MINE WORKERS OF AMERICA, DEFENDANT-APPELLEE,
 NO. 84-3528
 United States Court of Appeals, Sixth Circuit.
 8/9/85
 
 S.D.Ohio
 REVERSED IN PART, AFFIRMED IN PART AND REMANDED
 On Appeal from the United States District Court for the Southern District of Ohio, Eastern Division
 Before: MERRITT and KENNEDY, Circuit Judges; PHILLIPS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this action brought by the United States Secretary of Labor under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. Sec. 401 et seq., the District Court upheld the challenged election for the office of Secretary-Treasurer conducted on December 9, 1980, by defendant District 6, United Mine Workers of America (Union). The Court rejected plaintiff's contentions that: (1) the Union failed to provide all of its members so entitled with written notice of the election; (2) the form of the notice was inadequate to ensure a fair election; (3) members of Local 9922 did not vote by secret ballot; and (4) campaigning for candidates was conducted within polling areas.
 
 I.
 
 2
 District 6 encompasses the state of Ohio and the northern panhandle of West Virginia. There are 42 union locals within its jurisdiction. Local 9922 is a construction local; members of Local 9922 are responsible for construction work attendant to coal mining sites within the jurisdiction of District 6. Election conduct relative to Local 9922's voting forms the primary focus of the present case.
 
 
 3
 Although each of the 42 locals within District 6 was responsible for setting its own time and place for the December, 1980 election, District 6 was responsible for, among other duties, preparing voting lists and mailing notices of the election to all union members within the District. The District's Secretary-Treasurer, Jerry Binni, determined that between 620 and 625 members of Local 9922 were sufficiently current in their dues to be eligible to vote; he mailed election notices to those members. He also mailed notices to an additional 30-80 members whose dues were not more than four months in arrears. In all, District 6 sent election notices to between 650 and 700 people for Local 9922.
 
 
 4
 The notices listed the candidates and stated that the election would be held at the various construction sites and at a local truck stop, which was a common gathering spot for the union, between 6:30 a.m. and 9:00 p.m. on December 9, 1980. Local 9922 had chosen the time and locations for the election.
 
 
 5
 On the day of the election, a permanent ballot box was used at the truck stop and three job sites, and a travelling or 'floating' ballot box was used to service the various other construction sites within Local 9922's jurisdiction. The election tellers did not stay at each job site for the full duration between 6:30 a.m. and 9:00 p.m.; instead, they brought the floating ballot box to each site one at a time, remaining only long enough to allow the workers at the site to cast their votes.
 
 
 6
 Secretary-Treasurer Binni was re-elected by a 20-vote margin in an election in which 7,428 votes were cast District-wide. After the election, Binni's opponent filed a complaint with the Secretary of Labor and alleged that defendant's election conduct had violated LMRDA Sec. 401, 29 U.S.C. Sec. 481. Section 401 provides in relevant part:
 
 
 7
 (c) . . . Adequate safeguards to insure a fair election shall be provided . . ..
 
 
 8
 (d) Officers . . . shall be elected . . . by secret ballot among the members in good standing . . ..
 
 
 9
 (e) In any election required by this section which is to held by secret ballot . . . every member in good standing . . . shall have the right to vote . . .. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization . . . shall be declared ineligible to vote . . . by reason of alleged delay or default in the payment of dues. . . .
 
 
 10
 The Secretary found probable cause for a violation of the Act, and on November 6, 1981, filed the present action in District Court under 29 U.S.C. Sec. 482(b). The District Court held that the Secretary had failed to carry his burden of proving by a preponderance of the evidence that defendant had violated the Act. The Secretary appealed.
 
 II.
 
 11
 As to the first issue, the Secretary argues that the defendant violated Section 401(e) of the Act, which requires that notice of an election 'shall be mailed to each member at his last known address.' 29 U.S.C. Sec. 481(e). A 'member' for purposes of the Act is 'any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership' pursuant to the Union's lawful procedure. 29 U.S.C. Sec. 402(o). Although voting may be limited to 'members in good standing' (those whose dues are current), notice is required to all members, including those not in good standing, 29 C.F.R. Sec. 452.99, to afford them a reasonable opportunity to bring their dues current and participate in the election. See 29 C.F.R. Sec. 452.86.
 
 
 12
 The Secretary's primary argument here is that a large number of inactive workers who retained the collective bargaining right to be recalled by various employers within District 6 were actually members as defined in 29 U.S.C. Sec. 402(o). The defendant's failure to send these workers election notices, the Secretary argues, violated section 401(e) of the Act.
 
 
 13
 The Union counters that panel recall rights are not the equivalent of union membership. Workers secure union membership by paying an initiation fee and union dues, at the rate required either for active or inactive workers. The Union may terminate the membership of workers whose dues are more than four months in arrears, subject to its obligation under its own constitution to serve written notice of termination.
 
 
 14
 The Union concedes that it had a responsibility under the Act to mail election notices, not only to those members eligible to vote in the election, but also to those members who had not yet been given notice of termination and removed from membership. The evidence is uncontradicted that election notices were sent only to active dues-paying members and those whose dues were not in arrears more than four months. The factual dispute on this issue distills to whether the group of workers with recall rights whose dues were more than four months in arrears actually were served notice of their arrearage and termination of membership. Had the Union done so, these persons would not be members for the purposes of the Act, and the Union would not be under a statutory duty to send them election notices.
 
 
 15
 Mr. Hopkins, President of Local 9922, testified that, at the time of District 6 election, the Local 'probably had six or seven hundred active dues-paying members, but we could have had twelve or thirteen hundred members all told.' He explained:
 
 
 16
 An inactive member would be someone who had let their dues lapse but was still presently panelled, placed on the employer's list subject to recall or subject to come back in the mines when the respective contractors they worked for would secure work.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 [T]he way we are structured, we have two panels, two hiring procedures. One is a company panel procedure, which means that anybody that is panelled to a prospective company, if that contractor has work for him, he is obligated by our contract to go to work for him, but when he is idle and the contractor that he is panelled to--his name is listed on a multi-employer district panel list, and he is subject to recall by any one of three or four hundred contractors, and he not only can, but he is obligated to, go to work out of the labor pool for whatever contractor calls him.
 
 
 20
 The District Court found that Local 9922 had 1200 members. 'To be eligible to vote it is necessary that a member be an active dues paying member. Local 9922 had approximately 1200 members on October 31, 1980. However, it had only 620 active dues paying members.' The Secretary contends, and we agree, that these several hundred inactive members were entitled to notice, although, of course, they could not vote unless they brought their dues current.
 
 
 21
 As the party claiming the statutory violation, the burden is on the Secretary to prove a violation of section 401. Under its constitution, the Union had the power to terminate the membership of non-dues paying members more than four months in arrears. However, it was up to the Local to act affirmatively to do so. The Union's witness admitted and the District Court found that the union had a total membership of 1200. The Secretary did not have to offer further proof that their union membership had not been terminated.
 
 
 22
 The basis of the District Court's ruling on this issue was its erroneous understanding that 29 U.S.C. Sec. 481(e), 'only requires that each voting member be sent notice at his last home address' (emphasis added). This erroneous understanding of the requirements of the Act was apparently shared by the Union, as is still suggested in its brief on appeal:
 
 
 23
 [T]imely notices for the December 9 election were sent to all members in good standing of Local 9922 . . .. At the time of the election, Local 9922 had between 650-700 members who were entitled to notice, although somewhere between 900-1300 people had, at some point in time, been a member of Local 9922. This latter group of workers, although no longer members in good standing entitled to notice of the election, did retain a contractual right to remain on an employer's roster.
 
 
 24
 Appellee's Brief at 2-3 (emphasis added). Further, the union erroneously relies upon 29 C.F.R. Sec. 452.92 for the proposition that 'the regulations only require that dues paying members (including those four months in arrears without notice of such arrearage) be sent notice of the election as 'members' of such local.' Appellee's Brief at 12 (emphasis added). However, the relevant regulation, 29 C.F.R. Sec. 452.99, unequivocally requires that '[a] notice of election must be sent to every member as defined in section 3(o) of the Act, not only to members who are eligible to vote in the election.'
 
 
 25
 Although the Union also contends in its brief on appeal, apparently for the first time in this case, that the memberships of the group of workers at issue actually were terminated for non-payment of dues, the single citation to the record in its brief provides no support for that assertion. It is to the testimony of Jerry Binni, who stated, 'That's up to the local union to remove their roster. We do not do it. The local would remove those people's names; we just keep the address and the dues cards.' This testimony merely describes the procedure by which membership would be terminated; it does not assert that any memberships actually were terminated.
 
 
 26
 In short, both the Union's position and the District Court's decision in this case are premised on legal error; it has been conceded from the beginning, and there is no evidence to the contrary, that hundreds of inactive members of Local 9922 were not mailed notice of the disputed election. See Alvey v. General Electric Co., 622 F.2d 1279, 1284 (7th Cir. 1980). The union's failure to give notice to this group of members requires reversal and remand to the District Court for consideration of appropriate relief. See Wirtz v. Local 153, Glass Bottle Blowers Association, AFL-CIO, 389 U.S. 463 (1968) (subsequent election does not moot challenge to prior election for same office).
 
 III.
 
 27
 The Secretary also alleges that the notice sent by defendant was inadequate and thus failed to ensure a fair election in violation of section 401(c). Such notice 'must include a specification of the date, time and place of the election and of the offices to be filled, and it must be in such form as to be reasonably calculated to inform the members of the impending election.' 29 C.F.R. Sec. 452.99.
 
 
 28
 The election notice mailed to members of Local 9922 listed the candidates and stated, in full:
 
 
 29
 The regularly scheduled District Election will be held on December 9, 1980 at the job sites and the Shenandoah Truck Stop. Voting hours will be from 6:30 a.m. to 9:00 p.m.
 
 
 30
 In fact, voting from 6:30 a.m. to 9:00 p.m. was possible only at the permanent voting site named and three job sites. The 'floating ballot box' was used for the remainder. The box was not taken to sites where no work was taking place. At two sites, closed for inclement weather, impromptu polling places were arranged, with workers contacted by phone from company seniority lists.
 
 
 31
 The District Court held that 'this notice was reasonably sufficient, under the circumstances, to provide the members of Local 9922 with adequate notice of the times and places at which voting would occur.' This statement fails to distinguish that the regulation imposes two distinct requirements on the Union--the regulation requires that the notice be in such form as to reasonably inform the members of the impending election, which this notice does, and that the notice specify the date, time and place of the election. This the notice failed to do.
 
 
 32
 While use of a 'floating ballot box' is not unreasonable in appropriate circumstances, see 29 C.F.R. Sec. 452.929, we hold that in the instant case adequate notice would have to include the following information at a minimum, as a matter of law: a statement that a 'floating ballot box' will be employed, which will be at specific job sites for indeterminate and very limited periods of time, and an advisement to members intending to vote at a job site other than one at which they work that they should plan on voting at a permanent site; and a further statement that in case of a job site shut down for inclement weather, an alternative voting site may be arranged, and workers should contact a designated person such as their union steward to learn if such an arrangement has been made.
 
 
 33
 The notice employed in this case could have resulted in non-working members attempting to vote at job sites either closed or to which the ballot box had already come and gone, and workers at sites closed by inclement weather who were not reached by phone failing to vote because they did not know of the alternate site arranged nearby and could not reach the permanent site. While the record does not demonstrate whether the defects in this notice affected the outcome of the election, the Secretary contends and we agree that such proof is irrelevant to the question of whether the notice itself satisfied the requirements of the statute and regulations. A notice that disenfranchises even a few voters violates the Act, even if it does not affect the outcome of the election, although should the latter fact be proven the remedy may be something short of ordering a new election. See Wirtz v. Hotel Employees Union, Local 6, 391 U.S. 492, 506-08 (1968) (once violation is proven, burden shifts to union to present evidence that violation did not affect outcome of election). In this case, the contested election was decided by a margin of 20 votes. Since no proof was offered by the union respecting whether the effect of the notice on non-voting members affected the outcome of the election, we reverse the District Court on this issue as well.
 
 IV.
 
 34
 We find the Secretary's remaining allegations of section 401 violations unpersuasive. Pursuant to section 401(e), the Secretary argues that District 6 breached a statutory duty to mail each member notice 'at his last home address.' 29 U.S.C. Sec. 481(e). The District Court was justified in finding that the Union complied with the mandate of section 401(e) in this regard, as to those members who were mailed notice. Less than one dozen notices were returned for lack of delivery by the post office. The Union's efforts to keep addresses current, under the circumstances, satisfied the minimum requirements of the statute.
 
 
 35
 As to the argument that District 6 violated section 401(d) by not providing for a secret ballot election, the record supports the District Court's finding that the Union did provide for secret ballot elections, the 'prime requisite of elections.' 29 C.F.R. Sec. 452.97(a). See Marshall v. Local 12447, United Steelworkers, 591 F.2d 199 (3d Cir. 1978).
 
 
 36
 The Secretary cited cramped voting quarters at one location as indicative of the Union's breach, and relied on the statement of the election teller that it was possible for members to see how others voted 'if they really cared.' The teller also testified, however, that he observed no one looking at another member's ballot. Further, the teller allowed members to vote only one at a time on sloped drafting tables on either end of the 40-foot trailer. The District Court correctly analyzed the physical layout of the voting area; the court's findings on this issue were not clearly erroneous, see Anderson v. City of Bessemer City, ---- U.S. ----, 105 S. Ct. 1504 (1985), and we affirm its conclusion that the mandate of section 401(d) was fulfilled.
 
 
 37
 Finally, the District Court made specific findings of fact concerning the two candidates whom the Secretary had alleged were campaigning at the polling sites. We have reviewed the record carefully, and hold that the court's finding on this issue--that the Secretary did not meet his burden of proving a violation by a preponderance of the evidence--is not clearly erroneous.V.
 
 
 38
 Accordingly, the judgment of the District Court is reversed in part and affirmed in part, and the case remanded for further proceedings consistent with this opinion.
 
 
 39
 ---------------
 
 
 
 * Pursuant to Rule 43(c)(1), Fed. R. App. P., William E. Brock is substituted for Raymond J. Donovan, whom he succeeded as Secretary of Labor.
 ** Honorable Harry Phillips participated in oral argument but due to his death on August 2, 1985 took no part in the opinion.