# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3264

———————

| | | |
|---|---|---|
| Hilda L. Solis, Secretary of Labor, | * | |
| United States Department of Labor, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Amalgamated Transit Union, Local | * | |
| 1005, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: March 15, 2011
Filed: April 28, 2011

———————

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

———————

GRUENDER, Circuit Judge.

Hilda L. Solis, the United States Secretary of Labor ("the Secretary"), appeals the district court's[1] grant of summary judgment to Amalgamated Transit Union, Local 1005 ("Local 1005"), on the Secretary's claim that Local 1005's November 2008 election procedures violated the "adequate safeguards" provision of the Labor-

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 481(c). For the reasons that follow, we affirm.

## I.    BACKGROUND

Prior to October 2007, Local 1005 represented only bus drivers and other transport workers employed by MetroTransit, the public transportation organization for Minneapolis and St. Paul, Minnesota. Because the LMRDA excludes from its scope labor organizations that solely represent employees of "any State or political subdivision thereof," *see* § 402(e), the LMRDA did not apply to Local 1005. In October, 2007, Local 1005 was certified as the bargaining representative for a private bus line based in Rochester, Minnesota. Thereafter, because Local 1005 no longer represented only public employees, it became subject to the provisions of the LMRDA. *See Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (stating that the LMRDA "cover[s] those [unions] that represent only private sector workers and also so-called 'mixed unions,' i.e., those that deal with both public and private employers on behalf of their members concerning terms and conditions of employment").

Thus, after October of 2007, Local 1005's bylaws were subject to the provisions of the LMRDA, and any bylaws provision inconsistent with the LMRDA could no longer be enforced. Article 30 of Local 1005's bylaws imposed a meeting attendance requirement for members seeking an elected union office. This requirement stated that a member was not eligible for any office unless that member "attended not less than six (6) regular meetings each year during the twenty-four months prior to and including the nomination meetings" (hereinafter "meeting attendance requirement"). Local 1005 had enforced the meeting attendance requirement in previous elections, and the requirement was well known among the membership. However, according to Section 14.2 of the Amalgamated Transit Union Constitution ("Constitution"), the meeting attendance requirement applied only to those elections "not covered by the [LMRDA]." Once its elections were subject to the LMRDA, the Constitution dictated

that Local 1005 could not enforce the meeting attendance requirement in the bylaws. Article 30 of the bylaws also required that any office-seeker must have been a union member for two years prior to the nominations meeting (hereinafter "membership requirement"). The membership requirement did not present a conflict with the Constitution, and Local 1005 could enforce this requirement in an election subject to the LMRDA.

In preparation for Local 1005's tri-annual election of union officers, Local 1005 scheduled two meetings for September 23, 2008, at which members could nominate other members interested in running for an elected position. On August 26, 2008, twenty-nine days before the nominations meetings and nearly three weeks earlier than required by the bylaws, Local 1005 posted written notices on all of its workplace bulletin boards and on its website describing the upcoming elections and the nominations meetings. In those written notices, Local 1005 accurately informed its members of the only eligibility requirement for a member to run for office:

> AS PROVIDED IN ARTICLE 30 OF THE LOCAL BYLAWS: NO MEMBER SHALL BE ELIGIBLE TO ANY ELECTIVE OR APPOINTIVE OFFICE, OR AS A DELEGATE OR ALTERNATE OF THIS LOCAL, OR TO BE ABLE TO ATTEND ANY CAUCUSES OR SEMINARS UNLESS THEY HAVE BEEN A REGULAR MEMBER OF THIS LOCAL FOR A PERIOD OF NOT LESS THAN TWO (2) YEARS.

The written notices did not mention Article 30's now-inapplicable meeting attendance requirement; they simply listed the only eligibility prerequisite for candidates in the November 2008 election—the membership requirement.

Nonetheless, a small number of Local 1005 members expressed confusion to current officeholders and shop stewards about whether the meeting attendance requirement applied to the 2008 election. Those inquiries were answered correctly.

-3-

Members who asked whether the meeting attendance requirement still applied were told that it did not. Local 1005 did not post any other written notices, except for meeting reminders.

Local 1005's tri-annual election took place as planned on November 12, 2008. On November 19, 2008, six Local 1005 members—led by member Thomas Noland—complained in writing to the Local 1005 Executive Board about the election, contending that there was widespread confusion about the meeting attendance requirement. The Executive Board met with Noland and the five other complaining members and unanimously rejected their complaint on December 1, 2008. After pursuing other intra-union remedies, Noland dispatched a complaint letter to the Secretary on February 28, 2009.

The Secretary began an investigation of Local 1005's November 2008 election and, soon after, brought this action against Local 1005 pursuant to the "adequate safeguards" provision of the LMRDA. The Secretary and Local 1005 each moved for summary judgment. The district court granted Local 1005's motion and denied the Secretary's motion, and the Secretary now appeals.

## II.    DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1026 (8th Cir. 2010) (per curiam). "Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

When conducting an election, the LMRDA requires a union to provide "[a]dequate safeguards to insure a fair election." 29 U.S.C. § 481(c). Proof of a violation of the "adequate safeguards" provision is *prima facie* evidence that the

violation "may have affected" the outcome of the election, shifting the burden to the union to prove that the results of the election would have been the same absent the violation. *See Wirtz v. Hotel, Motel & Club Emps. Union, Local 6*, 391 U.S. 492, 506-07 (1968). If the Secretary proves by a preponderance of the evidence that a violation of the "adequate safeguards" provision has occurred, and if that violation "may have affected the outcome of an election," the court must declare the election void and order a new election under the Secretary's supervision. *See* § 482(c). The Secretary's regulation interpreting the "adequate safeguards" provision provides two specific examples of such safeguards, summarized by the Ninth Circuit as: "(1) if one candidate is permitted to have his nickname on the ballot, the other should enjoy the same privilege, and (2) voting instructions must be intelligible." *Brock v. Writers Guild of Am., West, Inc.*, 762 F.2d 1349, 1357 (9th Cir. 1985) (citing 29 C.F.R. § 452.110). "The inclusion of these mechanical procedural safeguards as examples of the required safeguards suggests that the Secretary, like Congress, construed the adequate safeguards provision narrowly." *Id.* While the LMRDA requires local unions to provide its members with "adequate notice" of its requirements for seeking elected office and for voting, *see Brock v Dist. 6, United Mine Workers of Am.*, 1985 WL 13586, at *5 (6th Cir. Aug. 9 1985) (unpublished per curiam), "perfect notice" is not required, *see Marshall v. Provision House Workers Union, Local 274*, 623 F.2d 1322, 1325 (9th Cir. 1980) (per curiam).

As an initial matter, the Secretary argues that the district court applied the wrong legal standard in its analysis. The Secretary points to the district court's statement that the Secretary's "allegations in this case simply do not reveal any sort of corruption, dictatorial practices, or racketeering, or even anything more than sloppiness." We find this argument unavailing. To be sure, the Secretary need not provide evidence of "corruption, dictatorial practices, or racketeering" to establish a violation of the "adequate safeguards" provision of the LMRDA. *See, e.g.*, *Hotel, Motel & Club Emps.*, 391 U.S. at 506-07; *Donovan v. Local 10902, Commc'ns. Workers of Am., AFL-CIO*, 650 F.2d 799, 802 (5th Cir. 1981) (per curiam). However,

the district court did not decide the case on this basis. Rather, the district court concluded that, although the Secretary "argues that the Union was required to do more" than post accurate written notices and respond to inquiries appropriately, "[the Secretary] does not . . . point the Court to any such requirement in the statutes, the regulations, or the caselaw." Because the district court found that Local 1005 was not required to take more safeguards than it did—and not because the Secretary failed to show evidence of "corruption, dictatorial practices, or racketeering"—the district court found no violation of § 481(c). Accordingly, we find the Secretary's position unpersuasive and proceed to her central contention in this appeal.

The Secretary contends that the district court erred when it determined that Local 1005 did not violate the "adequate safeguards" provision of the LMRDA. It is undisputed that Local 1005 did not enforce the meeting attendance requirement at any point during the November 2008 election process. The Secretary only argues that Local 1005 failed to provide "union members adequate notice that there was no meeting attendance requirement to run for electoral office." According to the Secretary, Local 1005 violated the "adequate safeguards" provision by not informing its members "of the change in the meeting attendance requirement."

The Secretary's argument fails for a number of reasons. The district court correctly found that Local 1005's written notices and announcements regarding the requirements to run for office were accurate. The written notices, posted twenty-nine days before the nominations meetings on Local 1005's job site bulletin boards and its website, listed the one requirement for seeking elected office—an individual must have been "a regular member of this local for a period of not less than two (2) years." The written notices accurately depicted the membership requirement and did not mention the meeting attendance requirement.

The Secretary, however, argues that these written notices were insufficient to provide "adequate safeguards" because they "specifically referenced" Article 30 of

-6-

Local 1005's bylaws and "did not state that [Article 30's meeting] attendance requirement no longer applied." We disagree with the Secretary. The written notices' reference to Article 30 simply acknowledged the source of the membership requirement. The notices did not suggest that the meeting attendance requirement applied to the November 2008 election.

If a member found himself confused as to whether the meeting attendance requirement still applied, the member could have asked one of Local 1005's elected officers or union shop stewards. It is undisputed that all members who inquired as to whether the meeting attendance requirement applied were informed accurately that it did not. Alternatively, the member could have attended one of the two nominations meetings on September 23, 2008. It is undisputed that all members present at the nominations meetings heard an accurate announcement of the sole requirement to stand for an elected office. We agree with the district court that these actions, coupled with the fully accurate written notices posted both on Local 1005's job site bulletin boards and on its website, amounted to "adequate safeguards" pursuant to the LMRDA.

In reaching this conclusion, we find instructive the Ninth Circuit's decision in *Provision House*. In that case, a local union adopted a set of new election rules that included "a provision that any candidate who wished the union to distribute his or her campaign literature must file a request for distribution with the union's secretary-treasurer within ten days after the nomination meeting." *Provision House*, 623 F.2d at 1323. The local union made this change without prior notice; in fact, the change was made at the start of the nominations meeting:

> [B]efore nominations were accepted, the union's executive secretary read a set of proposed rules governing the conduct of the forthcoming elections. The meeting was noisy; it was difficult to hear the secretary's reading; and several union members who spoke Spanish could not understand the reading in English. The rules were adopted, however, without discussion, by voice vote.

*Id.* The Ninth Circuit found no violation of the LMRDA: "[t]he challengers may not have had perfect notice of the ten-day rule. Nevertheless, the trial court received credible evidence that this ignorance was attributable to the challengers' inattention to the nomination meeting rather than to any failure of the union to adequately communicate the election requirements." *Id.* at 1325.

In *Provision House*, a union member seeking to campaign for an elected position was subjected to a new requirement without *any* prior notice. Here, in contrast, a member of Local 1005 who sought to run or nominate another member for elected office had twenty-nine days to view the posted written notices, which accurately described the one prerequisite to running for office—the membership requirement. In *Provision House*, the Ninth Circuit determined that announcing and adopting the new ten-day rule at the nominations meeting did not violate the adequate safeguards provision of the LMRDA. Likewise, Local 1005 announced at the nominations meeting that the only prerequisite for seeking elected office was the membership requirement. If such an announcement, without any prior notice, constituted "adequate safeguards" in *Provision House*, the steps taken by Local 1005 to ensure a fair election in this case also were adequate.

The cases cited by the Secretary do not conflict with our analysis. For instance, in *Marshall v. Local 468, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 643 F.2d 575 (9th Cir. 1980), a local union changed its balloting procedures without prior notice to non-incumbents, effectively limiting the time period available to campaign from thirty days to five days. *Id.* at 577. The union also changed its voting procedure from in-person voting to voting by mail, and it urged members to vote "immediately" even though members had thirty days to return ballots. *Id.* The court found a violation of the "adequate safeguards" provision, holding that "the change from the former system to the latter *without prior notification* to the challengers allowing them time to prepare and mail their campaign literature deprived them of the ability to more fully communicate with the voters." *Id.*

(emphasis added). While the union in *Local 468* provided no notice of a policy change that served significantly to restrict campaigning by challengers, accurate information about Local 1005's now less-restrictive requirements to stand for elected office was posted nearly a month before the nominations meeting and any confusion that manifested itself was countered with accurate information.

Similarly, in *Wirtz v. Local Union 262, Glass Bottle Blowers Ass'n of U.S. and Can.*, 290 F.Supp. 965 (N.D. Cal. 1968), the union made absentee ballots available to its members, but it took "[n]o steps . . . to advise members that absentee ballots would be available," *id.* at 968. As a result, only "some members" knew to ask for an absentee ballot. *Id.* A union member could have read all union notices and still have been unaware of the availability of absentee ballots. As such, the court found that the "circumstances surrounding the distribution, handling and counting of absentee ballots violated Section 401(c) of the Act." *Id.* In contrast, a Local 1005 member seeking an elected office or intending to nominate another member for elected office need only have consulted the posted written notices or attended a nominations meeting for a full and accurate list of the applicable requirements.

The cases cited by the Secretary, therefore, fail to provide sufficient support for the Secretary's contention that the LMRDA required Local 1005 to take more safeguards than it did in this case to ensure the fairness of the November 2008 election.[2]

---

[2] The Secretary argues that data from a survey she conducted during the course of her investigation of the November 2008 election show that Local 1005's failure to take adequate safeguards "may have affected the outcome of that election." However, because we hold that the district court properly found no violation of the "adequate safeguards" provision, we need not determine whether the alleged violation may have affected the outcome of the November 2008 election. *See* § 482(c).

## III.  CONCLUSION

Because we conclude that Local 1005's notice of the requirements to run for elected office in the November 2008 election did not violate the "adequate safeguards" provision of the LMRDA, we affirm the district court's grant of summary judgment to Local 1005.

_____