**Paul McCAFFERTY, Plaintiff, Appellee,**

v.

**LOCAL 254, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Defendant, Appellant.**

**No. 98–1909.**

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1999.

Decided Aug. 2, 1999.

Gabriel O. Dumont, Jr. for appellant.

David B. Rome for appellee.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LIPEZ, Circuit Judge.

LIPEZ, Circuit Judge.

In February 1998, Paul McCafferty filed a complaint in the district court requesting a preliminary injunction against his union, Local 254 of the Service Employees International Union (hereinafter "the Local" or "Local 254"). McCafferty claimed that Local 254 had "infringed upon his right to seek office within Local 254 ... by refusing to and failing to comply with his reasonable requests for a list of [Local 254–represented] companies/employers and

their locations ... and for the names and addresses of Local 254 members to allow him to distribute campaign literature." McCafferty predicated his claim to relief on Title I and Title IV of the Labor–Management Reporting and Disclosure Act of 1959 (the LMRDA). After the Local filed its opposing motion requesting the denial of McCafferty's request for preliminary relief and the dismissal of his action, the district court held a hearing and subsequently issued a preliminary injunction granting McCafferty some of the relief he requested. The district court also awarded McCafferty attorney's fees in a later order. This appeal contesting the award of attorney's fees followed.

We conclude that McCafferty is entitled to attorney's fees for prevailing on his Title I claim but he is not entitled to attorney's fees for his Title IV claim. Given the court's undifferentiated award of attorney's fees for McCafferty's claims, we must vacate that award and remand for a new determination of attorney's fees. We begin our explanation of this result with a detailed account of the relevant facts and procedure.

## I.

McCafferty, at all times relevant to this opinion a member in good standing of Local 254, wanted to run for a union office; nominations were scheduled for March 1998. On November 26, 1997 he wrote to Local 254's recording secretary requesting, *inter alia,* a copy of Local 254's by-laws, blank nomination papers, a copy of any union rules governing fund raising, and "a list of Local 254 represented com-

panies." [1] On December 4, 1997, Local 254's recording secretary responded by sending McCafferty a copy of Local 254's Constitution and by-laws, and pertinent sections of the LMRDA. He also informed McCafferty that nomination papers had not yet been printed and that "Local 254 has no specific rules on governing fund raising." The LMRDA provisions which the Local provided to McCafferty included 29 U.S.C. § 481(c), which sets forth the Local's obligation "to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing." The letter said nothing about the list of represented companies that McCafferty had requested.

On January 28, 1998, McCafferty again wrote to Local 254's recording secretary requesting "a list of Local 254 represented companies/employers and their locations," reiterating his requests for blank nomination papers and the Local's fund raising rules, and adding a new request that "the Local provide [him] with mailing labels containing the names and addresses of voting Local 254 members." On February 1, 1998, Local 254 distributed a newsletter to all members, including McCafferty, informing members of official nominating procedures and directions for obtaining nominating papers. [2] On February 3, 1998, the recording secretary mailed a letter to McCafferty which included the following statements:

> There is no requirement to provide prospective candidates with a listing of contracted employers. You may, however,

---

1. Local 254's nomination process required candidates to secure the signatures of at least 100 union members, no more than 40 of which could come from any one bargaining unit. Therefore, the Local's nomination process made familiarity with multiple bargaining units a necessity for any member seeking union office.

2. The Local states that "the newspaper identifies, on the back page alone, thirty-six separate bargaining units." The Local does not specify, and the record does not reveal, whether the newspaper contained the addresses of these bargaining units. McCafferty asserts that the Local represents between 180 and 200 separate bargaining units, and this assertion is not challenged by the Local. Obviously, a list of thirty-six bargaining units (with or without addresses) in the union newspaper is not equal to a list of all bargaining units and locations.

inspect a list of Local 254–contracted employers by appointment at the Union Office. You may not copy the list.

*Campaign Literature:* Reasonable requests of any candidate for the Local to mail campaign literature at the candidates' expense will be complied with. Payment to cover the expenses involved in such mailing will be paid in advance. Other than distribution of literature made at candidate's expense, there will be no mailings of campaign literature by the Local.

*Membership Lists:* Every candidate shall be given the right to inspect the printout membership list of Local 254. Special arrangements will be made to set up a separate room where the membership list will be available for inspection.... No candidate shall be furnished a copy of the membership list. Candidates may not copy the membership list.

This letter, although postmarked on February 4, 1998, did not reach McCafferty until approximately one month later. Apparently, a change of address had been filed for McCafferty which temporarily misdirected his mail to Las Vegas, Nevada.[3]

On February 6, 1998, McCafferty filed the instant suit, seeking an injunction to compel Local 254 to provide him with "(a) a list of all Local 254 bargaining units and locations; and (b) mailing labels of all voting members in Local 254." On February 12, the Local responded in writing to McCafferty's request for a preliminary injunction. While acknowledging its duty under Title IV to "comply with any reasonable request that the Union distribute at the member's expense campaign literature," Local 254 denied any "requirement

under Title I of the LMRDA that Local 254 furnish McCafferty with a list of Local 254 employers and locations." Local 254 attached to its response a copy of its February 3, 1998 letter and a sworn affidavit from the recording secretary affirming that he had mailed the letter on February 3. McCafferty apparently saw the Local's February 3 letter for the first time when it was filed with the court.

The district court held a hearing on McCafferty's preliminary injunction motion on February 13, 1998. At the hearing, Local 254 reiterated its position that McCafferty had no right to a copy of either a list of contracting employers or the membership list. The district court inquired whether Local 254 would agree to post a list of employers and their locations and allow that list to be copied. The Local assented and, later that day, posted the list.

On February 16, McCafferty forwarded a draft preliminary injunction to Local 254 memorializing the commitments the Local had made at the February 13th hearing. On February 17, Local 254 notified McCafferty that it would oppose the issuance of an injunction and that a list of Local 254 employers and addresses had been posted at the Local's offices since February 13, 1998.[4] According to the terms of the draft preliminary injunction, such a list was to be posted "by the close of business February 19, 1998."

On February 17, McCafferty filed his proposed injunction with the court and Local 254 filed its opposition and proposed order of dismissal. On that same day, the district court issued the preliminary injunction in its proposed form, adding the handwritten notation that it was issued

---

3. The district court made no finding of responsibility for this errant mailing and such a finding is not necessary to our disposition of this appeal.

4. Local 254 argued that McCafferty was not entitled to a preliminary injunction because he had never asked in his complaint or other-

wise that Local 254 undertake a mailing of campaign literature at his expense or that he be permitted to review a list of the Local 254 employers and locations at the union offices. The Local further noted that the employer list had already been posted at the Union office since February 13.

"upon agreement of the parties." The preliminary injunction ordered the Local to post a list of bargaining units by employer and location; to allow the copying of that list; and to comply with any candidate request to mail campaign literature so long as the candidate paid in advance the cost of such mailing. The preliminary injunction also included a briefing schedule on the plaintiff's claim for attorney's fees and costs.

On July 9, 1998, the district court issued an opinion and order on attorney's fees setting forth the basis for the issuance of the preliminary injunction and the award of attorney's fees. With respect to McCafferty's request for a list of all bargaining units represented by Local 254 by employer and location, the court concluded that this request was "intended to remedy th[e] imbalance of access to information required for nomination." As such, the court found that the claim arose under Title I of the LMRDA, and it awarded attorney's fees to McCafferty pursuant to *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). With respect to McCafferty's request for mailing labels with the addresses of union members, the court concluded that "McCafferty had a clearly established right to have the union provide him with mailing labels containing the names and addresses of voting union members" for the purpose of arranging "at his own expense, for a timely mailing of campaign literature prior to the convention at which nominations would be made." Relying on *International Organization of Masters, Mates and Pilots v. Brown*, 498 U.S. 466, 476, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991) for this "clearly established" right, the court characterized the Local's unwillingness to provide McCafferty with the requested mailing labels as "verg[ing] on the frivolous." Although the court acknowledged that the mailing label claim arose under Title IV of the LMRDA, it found that "an award of fees is appropriate on this claim as well." The court ordered the Local to pay McCafferty an aggregate award of attorney's fees in the amount of $9,388.35 for his Title I and Title IV claims. This appeal followed.

## II.

Before analyzing the specific claims at issue in this case, we set forth some general principles of law applicable to these claims.

### A. *General Principles*

The LMRDA protects the equal rights of union members to participate in the internal affairs of their unions. In enacting the LMRDA, Congress found that "it is essential that labor organizations ... and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations," and declared that the LMRDA was designed "to eliminate or prevent improper practices on the part of labor organizations." 29 U.S.C. §§ 401(a), (c). Title I of the LMRDA, 29 U.S.C. §§ 411–15, "provides a Bill of Rights for union members, guaranteeing equal rights and privileges to nominate and vote for candidates, as well as freedom of speech and assembly and protection from improper discipline." *Molina v. Union De Trabajadores De Muelles*, 762 F.2d 166, 167 (1st Cir.1985) (internal quotation marks omitted). The "typical Title I claim involves an allegation of unequal treatment among union members." *Id.* at 167 (quoting *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 539, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984)). The focus of Title IV is more limited. It sets out detailed regulations "aimed solely at protecting union democracy through free and democratic elections." *Id.* These regulations include the requirement that unions must "comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy." 29 U.S.C. § 481(c).

■ The LMRDA includes separate enforcement mechanisms for Title I and Title IV. "Title I is enforceable in federal court through a private action filed by the aggrieved union members." *Molina,* 762 F.2d at 167; *see also* 29 U.S.C. § 412. "Enforcement of Title IV rests with the Secretary of Labor," *Molina,* 762 F.2d at 167, with one exception. The provision of Title IV obligating unions to mail candidates' campaign literature, 29 U.S.C. § 481(c), is "enforceable at the suit of any bona fide candidate for [union office] in the district court of the United States." 29 U.S.C. § 481(c); *International Organization of Masters, Mates & Pilots v. Brown,* 498 U.S. 466, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991) ("[U]nlike other rights created by Title IV that are judicially enforceable only in actions brought by the Secretary of Labor, the § [481(c)] right is directly enforceable in an action brought by the individual union member"); *see also Mims v. Teamsters Local 728,* 821 F.2d 1568, 1571 (11th Cir.1987) (recognizing that § 481(c) "is the only privately enforceable provision in Title IV").

While neither Title I nor Title IV explicitly authorizes the award of attorney's fees to prevailing union member-litigants, the Supreme Court has held that "the allowance of counsel fees to the successful plaintiff in a suit brought under [Title I] of the LMRDA is consistent with both the Act and the historic equitable power of federal courts to grant such relief in the interests of justice." *Hall v. Cole,* 412 U.S. 1, 14, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Recognizing that "the traditional American rule ordinarily disfavors the allowance of attorney's fees in the absence of statutory ... authorization," the Court reasoned that a successful Title I litigant "render[s] a substantial service to his union as an institution and to all of its members." *Id.* at 4, 8, 93 S.Ct. 1943 (footnotes omitted). The Supreme Court compared suits under Title I of the LMRDA to shareholder suits where the "successful litigation confers 'a substantial benefit on the members of an ascertainable class,'" (in the LMRDA con-

text, the union membership) and it is therefore equitable to divide the financial burden among the benefitted class. *Id.* at 6, 93 S.Ct. 1943 (quoting *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393–94, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)). The courts of appeals which have faced the issue have found this reasoning equally applicable to meritorious claims to enforce the mailing provision of § 481(c), Title IV's only privately enforceable provision. *See Mims,* 821 F.2d at 1571; *Bliss v. Holmes,* 867 F.2d 256, 258 (6th Cir.1988).

Local 254 objects to the court's award of attorney's fees for McCafferty's employer list claim pursuant to Title I and his mailing label claim pursuant to Title IV. We consider each claim in turn.

### B. *List of Represented Employers*

■ The Local characterizes McCafferty's demand for access to the employer list as a challenge to a general, evenly applied rule rather than a challenge premised on any discriminatory treatment. In the absence of such discriminatory treatment, the *sine qua non* of a Title I claim, McCafferty's claim would arise exclusively under Title IV of the LMRDA. As discussed above, the only privately enforceable provision in Title IV is the provision of § 481(c), which deals with reasonable requests to mail campaign literature; other provisions of Title IV must be enforced by the Secretary of Labor. *See Molina,* 762 F.2d at 167. Thus, if the Local were correct in its insistence that McCafferty's employer list claim falls within the exclusive purview of Title IV, the district court should not have addressed the merits of McCafferty's request for access to the employer list.

In support of its argument, the Local invokes *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), and its progeny. In *Calhoon,* union members brought a lawsuit, ostensibly under Title I, challenging their union's restrictive policies regulating eligibility for union office. *See id.* at 136, 85 S.Ct. 292. The union by-

laws at issue in *Calhoon* prohibited a member from nominating anyone but him or herself for union office, and the union's national constitution required, inter alia, membership in the national union for five years to be eligible for union office. *See id.* The Supreme Court refused to recognize a Title I action in *Calhoon* because "Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards." *Id.* at 138, 85 S.Ct. 292. The Court emphasized that the complaining union members had "not been discriminated against in any way and ha[d] been denied no privilege or right to vote or nominate *which the union has granted to others.*" *Id.* at 139, 85 S.Ct. 292 (emphasis added); *see also Molina,* 762 F.2d at 168–69 (holding that because plaintiffs challenged an evenly applied rule as having been "activated for an improper purpose" their complaint "[went] to the overall fairness of the election voting process—the domain of Title IV—rather than to an individual's unequal treatment" which would be actionable under Title I). The Local insists that McCafferty, like the plaintiffs in *Calhoon* and *Molina,* complains about an evenly applied rule which does not discriminate against any union member.

The Local misapprehends the nature of McCafferty's Title I claim, aptly perceived by the court as a claim relating to the conditions of access to the employer list. The Local conceded at the preliminary injunction hearing that incumbent union officials had unlimited access to the employer list. Union members like McCafferty, intent on running for office and perhaps challenging incumbents, could view that list only by appointment and could not copy it. Given the Local's acknowledgment of unlimited incumbent access to the list, the limited access/no-copy rule was tantamount to a rule that incumbents may possess the employer list but other union members may not. The discriminatory effect of that rule on union members seeking nomination for union office is palpable (see note 1, above), and is susceptible to a Title I challenge.

■ The Local also argues the inapplicability of Title I to McCafferty's claim based on McCafferty's efforts to secure a nomination for union office and hence participate in a union election. According to the Local, the court ignored "long-standing principles that Title I does not protect the right of candidates or prospective candidates to seek nomination and election."

The Local has too limited a view of Title I. Although Title IV focuses on union elections, "Title I of the LMRDA was specifically designed to protect the union member's right to seek higher office in the union." *Hall v. Cole,* 412 U.S. 1, 14, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The rights of union members are not protected exclusively by Title I or by Title IV. As the Supreme Court has recognized, Title IV "protects many of the same rights as does Title I." *Crowley,* 467 U.S. at 539, 104 S.Ct. 2557. While Title IV may be the only remedy for rights protected by both Title I and Title IV once an election is completed or underway, "the full panoply of Title I rights is available to individual union members 'prior to the conduct' of a union election." *Id.* at 541, 104 S.Ct. 2557. Therefore, if a Local denies equal rights to its members during the nomination process, the Local's conduct may be challenged in court by members of the union pursuant to Title I. McCafferty posed such a challenge, and his claim is cognizable under Title I.

■ In its final challenge to McCafferty's Title I claim, the Local argues that the court wrongly presumed the presence of discrimination from the Local's concession that incumbent officers have unequal access to the employer lists and that Title I requires evidence that incumbents had in fact used their unequal access to their advantage as candidates. *See Marshall v. Provision House Workers Union, Local 274,* 623 F.2d 1322, 1326 (9th Cir.1980)

(finding that "unequal access alone does not warrant a finding of 'discrimination'"); *cf. Reich v. Local 396, Int'l Bhd. of Teamsters,* 97 F.3d 1269, 1276 (9th Cir.1996) (recognizing discrimination in challengers' limited access to employer lists where the incumbents exploited their advantage by campaigning at job sites with which they were familiar because of their activities as incumbent union officials). This argument of the Local borders on the frivolous. Its agreement at the preliminary injunction hearing to grant McCafferty substantially the relief he sought with respect to the employer list (posting the list and allowing it to be copied) obviated the need for evidence of actual discrimination on this Title I claim. Having conceded defeat on this claim before the district court, the Local cannot assert error on the basis of insufficient evidence.

■ Given the court's correct determination that McCafferty's employer list claim was cognizable under Title I, we review for abuse of discretion the district court's award of attorney's fees for that claim. *See Local 285, Service Employees Int'l Union v. Nonotuck Resource Assocs., Inc.,* 64 F.3d 735, 737 (1st Cir.1995). As already noted, the Supreme Court has sanctioned the award of attorney's fees to successful litigants under Title I of the LMRDA, reasoning that union members who prevail on Title I claims "confer[ ] substantial benefits" on their fellow union members. *Hall,* 412 U.S. at 5, 93 S.Ct. 1943. Local 254 dismisses the relief won by McCafferty as too insubstantial for the court to "intuitively conclude that a common 'substantial benefit' was achieved for the members of Local 254," and argues further that there is no evidence in the record "that the failure of Local 254 to disseminate a list of Local 254 employers

has ever impeded any member's right to seek his/her nomination for Union office."

The Local insists on evidence of a "substantial benefit" that is not required. In the seminal case of *Hall v. Cole,* the Supreme Court affirmed the award of attorney's fees because "by vindicating his own right of free speech guaranteed by . . . Title I of the LMRDA, [the plaintiff] necessarily rendered a substantial service to his union as an institution and to all of its members." *Hall,* 412 U.S. at 8, 93 S.Ct. 1943. The district court concluded that McCafferty's litigation conferred a similar benefit: "McCafferty unquestionably procured access to employer and bargaining unit information that far exceeded that which the union had previously offered to provide." This access advanced the equal rights of union members to pursue union office.[5] *See id.* at 8, 93 S.Ct. 1943 ("[T]o the extent that [Title I] lawsuits contribute to the preservation of union democracy, they frequently prove beneficial 'not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.'") (quoting *Yablonski v. United Mine Workers of America,* 466 F.2d 424, 431 (D.C.Cir. 1972)).

### C. *The Mailing Labels*

■ The district court's award of attorney's fees on the Title IV claim cannot be sustained. As a legal matter, the district court was incorrect in stating that McCafferty had "a clearly established right to have the union provide him with mailing labels containing the names and addresses of voting union members." Title IV of the LMRDA imposes on unions the "statutory duty to distribute campaign literature to their membership in response to the reasonable request of any candidate for union

---

**5.** The Local further asserts that McCafferty's access to the list cannot be considered a victory because it was "voluntarily granted" by the Local. This description defies credulity and explains the district court's evident frustration with the Local. Indeed, if Local 254 had "voluntarily granted" McCafferty meaningful access to the list when he requested it, there would have been no court case and no attorney's fees. The attorney's fees at issue are a consequence of the Local's initial refusal to allow the employer list to be copied, even after McCafferty filed a demand for injunctive relief.

office." *Brown*, 498 U.S. at 467, 111 S.Ct. 880 (construing 29 U.S.C. § 481(c)). Although the court cited language in the *Brown* opinion recounting the candidate's *request* "that the Union provide him with mailing labels containing the names and addresses of voting Union members to be given to a mailing service so that he could arrange, at his own expense, for a timely mailing" of campaign materials, *id.* at 469, 111 S.Ct. 880, the Supreme Court affirmed a preliminary injunction that differed from the request of the plaintiff in *Brown* by directing the union "to deliver the names and addresses of the Union members *to a mailing service acceptable to the parties.*" *Id.* (emphasis added).

Moreover, the parties in *Brown* were concerned with the timing of campaign mailings and whether the union could postpone compliance with an otherwise reasonable mailing request merely because it conflicted with a union rule that authorized mailings only after nominations had been made. *See id.* at 468, 111 S.Ct. 880. In holding that the union's rule was inconsistent with the union's statutory obligation to comply with all "reasonable" requests for mailings, *id.* at 478, 111 S.Ct. 880, the Supreme Court focused on the timing of mailings of campaign literature rather than the party who would receive a member list as a prelude to a mailing. Thus, the *Brown* Court had no occasion to comment on the significant difference between the union member's initial request to have mailing labels provided to him personally (to turn over to a mailing service) and the district court's order that the union provide the mailing labels directly to a mailing service acceptable to the parties. The distinction is important because "[t]he legislative history of the LMRDA demonstrates a congressional intent that the use of membership lists be severely limited and that

such lists be kept out of the hands of partisans in union campaigns to avoid coercion of members." *Marshall*, 623 F.2d at 1326; *see also Legislative History of the Labor–Management Reporting and Disclosure Act of 1959* at 1240 (1959 ed.) (Senator McClellan) (recognizing that there was "apprehension that a person might become a candidate and then use the [membership] list for improper purposes" and explaining that the LMRDA "would simply permit [the candidate] to send his campaign material to the union and have the union mail it out").

*Brown* clearly does not stand for the proposition that candidates for union office are entitled to mailing lists.[6] Indeed, such a reading would render another part of § 481(c) superfluous. Section 481(c) gives each candidate for union office the right to inspect a membership list containing names and last known addresses of all members "once within 30 days prior to an election." 29 U.S.C. § 481(c); *see also* 29 C.F.R. § 452.71 ("The right of inspection does not include the right to copy the list but does include the right to compare it with a personal list of members."). There would be no reason to guarantee candidates access to the list "once within 30 days prior to an election" if candidates were entitled to the list as a matter of right.

Factually, the history of the mailing label claim is also markedly different from McCafferty's employer list claim. In his initial correspondence with the Local's recording secretary, McCafferty did not inquire about mailing labels and he did not request that the Local undertake a mailing on his behalf. Later, McCafferty requested that the Local provide him with a set of mailing labels of the Local membership to be turned over to a mailing service, and he continued to press this claim in his request

---

**6.** Until he accepted the Local's assurance to undertake a mailing, McCafferty was requesting that the mailing labels be provided directly to him so that he could provide the labels to a mailing service of his choice. Given these facts, we need not decide whether section 481(c) could be read to require that the mailing labels be provided at the candidate's request to an independent mailing service, assuming that the request is reasonable and assurances of confidentiality can be obtained from the mailing service.

for injunctive relief. In response, the Local at all times acknowledged an obligation to undertake a mailing of campaign literature on McCafferty's behalf (and at his expense), but it refused to turn over the mailing labels to McCafferty. In fact, even before McCafferty had requested mailing labels, in response to McCafferty's first letter, the Local had provided McCafferty with a copy of section 481(c) of the LMRDA which codifies the Local's obligation to undertake mailings at the candidate's expense. Later, both in its February 3 letter and in its motion to dismiss McCafferty's complaint, the Local acknowledged this statutory duty and consistently represented that it intended to comply with this obligation. With respect to McCafferty's Title IV claim, the lawsuit had no effect on the union's behavior or obligations. The court therefore erred in designating McCafferty as a "prevailing party" on this claim.[7]

For these reasons we must vacate the court's award to McCafferty of attorney's fees which erroneously included fees for his Title IV claim.

### III.

■■■■■ McCafferty sought and received from the district court attorney's fees for the legal work required to establish his right to attorney's fees in the underlying action. The principle is well established that "[t]he fee application is a necessary part of the award of attorney's fees. If the original award is warranted ... a reasonable amount should be granted for time spent in applying for the award." *Donovan v. CSEA Local Union*

*1000*, 784 F.2d 98, 106 (2d Cir.1986). This reasoning applies equally to attorney's fees on appeal. *See Kinney v. International Bhd. Of Elec. Workers*, 939 F.2d 690, 695 (9th Cir.1991); *Local 17, Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers v. Young*, 775 F.2d 870, 873 (7th Cir.1985); *see also Cole v. Hall*, 376 F.Supp. 460 (E.D.N.Y.1974) (awarding appellate fees on remand in seminal LMRDA attorney's fees case). To proscribe attorney's fees for appellate fee litigation might lead to frivolous fee litigation by union officials in hopes of frustrating the vindication of members' rights and chilling future challenges. *See Young*, 775 F.2d at 873 ("If disgruntled union members, as prevailing plaintiffs, were forced to incur costs for unsuccessful, fruitless Union appeals, this would have a chilling effect on union members' ability to afford challenging the union leadership" such that "the purpose of the LMRDA would be frustrated.").

Because our decision requires the district court to re-calculate the prior fee award, we remand to the district court for a determination of reasonable attorney's fees for the appellate litigation as well. *See* 1st Cir. R. 39.2 (directing applications for attorney's fees in connection with appeals to be filed with the clerk of the court of appeals "except in those circumstances where the court of appeals has ordered that the award of fees and other expenses be remanded to the district court for a determination").

### IV.

For the reasons set forth above, the attorney's fee award is *Vacated* and the

---

**7.** The preliminary injunction directed that "Local 254 shall comply promptly with the request of McCafferty or any other bona fide candidate for office to mail campaign literature to Local 254 members so long as such candidate pays in advance the reasonable expense of such mailing." This language simply reflects the statutory directive in § 481(c) that the Local had always acknowledged. Nevertheless, the court apparently viewed McCafferty as a prevailing party on his Title IV claim because of the court's erroneous

view that, although McCafferty was entitled to a set of mailing labels for union members, he had accepted as a compromise the Local's assurance (memorialized in the preliminary injunction) that the union would comply with his reasonable requests to undertake mailing(s) at his expense. In recognition of this disparity between what McCafferty sought and what he got in the preliminary injunction, the court decreased McCafferty's fee award on the Title IV claim by ten percent (10%).

matter is **Remanded** to the district court for a new determination of attorney's fees consistent with this decision.