**Migdalia MAGRIZ and Silvia Rivera, Plaintiffs,**

v.

**UNION DE TRONQUISTAS DE PUERTO RICO, LOCAL 901, International Brotherhood of Teamsters, a Labor Organization, Defendant.**

**Civil No. 10–1201 (ADC).**

United States District Court,
D. Puerto Rico.

Feb. 18, 2011.

Linda Backiel, Linda Backiel Law Office, San Juan, PR, Barbara Harvey, Detroit, MI, for Plaintiffs.

Jose E. Carreras-Rovira, Jose E. Carreras Law Office, San Juan, PR, for Defendant.

### OPINION & ORDER

AIDA DELGADO-COLÓN, District Judge.

Presently before the court is Migdalia Magríz ("Magríz") and Silvia Rivera's ("Rivera") (collectively "plaintiffs") motion for preliminary injunction and memorandum in support thereof, pursuant to Fed. R.Civ.P. 65. **Docket No. 23.** Plaintiffs claim they have been unjustly disciplined and expelled from their union in violation of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA") 29 U.S.C. § 401 et seq. Consequently, they seek to enjoin defendant, Unión de Tronquistas de Puerto Rico, Local 901 ("defendant" or "Local 901"), to reinstate them to good standing membership as stewards in the union, with the right to campaign actively, and run for union office. *Id.* at 5. Defendant opposes plaintiffs' motion. **Docket Nos. 27–1.** Parties also submitted a stipulation of uncontested facts and supplemental authority in support of its motion for preliminary injunction. **Docket Nos. 37 and 52.**

On November 15, 2010, the court held an evidentiary hearing on plaintiffs' motion for preliminary injunction. The court heard the sworn testimonies of Migdalia Magríz–Marrero, Silvia Rivera–Torres,

Raymond David Reyes–Rivera and of Carmen Adelaida Acevedo on behalf of plaintiffs; defendant did not present any evidence. **Docket No. 39.** After reviewing parties' stipulations of uncontested fact and the witnesses presented at the evidentiary hearing, the court reached the following factual determinations.

## I. Factual Determinations

1. Plaintiffs, Magríz and Rivera, were members in good standing of Local 901, Unión de Tronquistas, until suspended for six (6) years, beginning March 10, 2009. **Docket No. 37 at ¶ 1.**

2. Magríz has been employed at Crowley Liner Services de Puerto Rico ("Crowley") since on or about June 27, 1995, and Rivera has been employed at Pepsi–Cola Manufacturing since January 1, 1987. **Docket No. 37 at ¶¶ 2, 28, 29.**

3. Plaintiffs served as the elected steward of their respective units until they were suspended from membership and removed as stewards on March 10, 2009. **Docket No. 37 at ¶ 3.**

4. The stewards participate in the Shop Steward's Council ("Steward's Council"). The Steward's Council gathers all the stewards every two (2) months to discuss pending issues, such as social issues of interest, new shops, grievances. Such meetings affords them the opportunity of communicating with the Board and the business agents. The stewards, in turn, take the information acquired at the Steward's Council meeting and inform their shop members.

5. Plaintiffs, as well as Maritza Quiara ("Quiara") and Humberto Miranda ("Miranda") were all members of a partial slate of candidates for union office, known as "Teamsters Making a Difference". At the August 30, 2008 nominations meeting, Magríz was nominated for the position of Vice President, while Rivera was nominated for the position of Trustee. Quiara, former plaintiff who has since retired, was nominated for the position of President. Miranda also ran for a vacant Trustee position. **Docket No. 37 at ¶¶ 5, 34., 36**

6. The last regular election for members of Local 901's Executive Board was held on October 3, 2008. **Docket No. 37 at ¶ 4.** The next scheduled elections are in October of 2011.

7. During the election, the "Teamsters Making the Difference" slate was supported at Coca–Cola, by a vote of 108–6. **Docket No. 37 at ¶ 6.**

8. The Coca–Cola Collective Bargaining Agreement, preceding the current one, expired in the end of June 2008, and was extended in writing up to the end of July, 2008, when it expired, and was not extended further. **Docket No. 37 at ¶ 7.**

9. On September 10, 2008, Coca–Cola suspended five union shop stewards from employment, accusing them of leading a work stoppage during the previous night. On September 15, 2008, Local 901's principal officer Germán Vázquez ("Vázquez") met with Coca–Cola employees in Cayey, Puerto Rico, near the Coca–Cola plant. The purpose of the meeting included among others, obtaining authorization to strike if the union could not persuade Coca–Cola to engage in the immediate reinstatement of the stewards and for it to return to the bargaining table. **Docket No. 37 at ¶ 8.**

10. All union members present voted in favor of the strike and other issues discussed. Following the unanimous strike authorization vote by Coca–Cola employees, Vázquez sought and obtained approval for strike payments by the International Union on October 14, 2008. **Docket No. 37 at ¶¶ 9–10.**

11. On October 5, 2008, the Teamsters Making a Difference slate filed a post-election protest, enumerating their complaints about election violations. **Docket No. 37 at ¶ 11.**

12. On or about October 6, 2008, Local 901 fired José Adrián López as its business agent for the Coca–Cola shop. **Docket No. 37 at ¶ 12.**

13. On or about October 10, 2008, Coca–Cola converted the stewards' suspensions to permanent discharges. **Docket No. 37 at ¶ 13.**

14. Quiara did not attend the October 12, 2008 meeting. She was hospitalized in Auxilio Mutuo on October 9 through 13, 2008. **Docket No. 37 at ¶¶ 14, 51.**

15. On October 20, 2008, the Coca–Cola workers went on strike to protest the stewards' discharges and to reconvene negotiations. The stewards, together with López, constituted the union's bargaining committee. **Docket No. 37 at ¶ 15.** No union agent, representative or official went to the Coca–Cola strike area from October 20 through October 22, 2008, nor communicated directly with union members about its position regarding the strike. **Docket No. 37 at ¶ 47.**

16. No union agent, representative or official told Magríz, Quiara or Rivera that the strike was not authorized by the union or that they could be subject to any internal discipline for supporting or participating in it. **Docket No. 37 at ¶ 48.**

17. The strike ended on October 22, 2008. **Docket No. 37 at ¶ 16.**

18. On January 26, 2009, Alexis Rodríguez sent a letter (UX 2, Defendant's Exhibit A) to Germán Vázquez, requesting recording of the hearing against Magríz, and subsequently sent similar letters and requests regarding the proceedings against Rivera and Quiara. **Docket No. 37 at ¶ 31.**

19. On January 27, 2009, Germán Vázquez sent a letter (UX 3, Defendant's Exhibit B) to Millie Pérez, Pepsico International's Human Resources Director, requesting leave for Rivera to attend the hearing scheduled for February 12, 2009. **Docket No. 37 at ¶ 32.**

20. Plaintiffs did not attend the union hearings held against them on February 12, 13 and 14, 2009. **Docket No. 37 at ¶ 33.**

21. On June 19, 2009, the Independent Review Board asked General President James Hoffa to investigate and institute charges against Local 901 principal officer Germán Vázquez for embezzling union funds. **Docket No. 37 at ¶ 18.**

23. Vázquez remained in office pending disposition of the charges against him. **Docket No. 37 at ¶ 19.**

24. On or about September 1, 2009, Local 901 filed disciplinary charges against the remaining member of the "Teamsters Making the Difference" slate and three of the slate's announced election observers: Humberto Miranda, Raymond Reyes ("Reyes"), Orlando Hernández ("Hernández") and Jesús Báez ("Báez") for participating and/or attending the October 12, 2008 meeting and/or the Coca–Cola strike. Their hearings were scheduled for September 30, 2009. All but Hernández attended their hearings. Miranda and Báez did not present evidence at their trials. **Docket No. 37 at ¶¶ 20–21, 43, 45.**

25. At all material times, Reyes and Hernández were Local 901 shop stewards in their respective shops (Hertz and Metrobus), while Báez and Miranda were not. **Docket No. 37 at ¶ 46.**

26. The union never imposed any disciplinary sanction against Reyes, Miranda, Báez or Hernández. **Docket No. 37 at ¶ 44.**

27. None of the Coca–Cola employees, members of Local 901, that participated in the strike were disciplined by the union. Further, none of the Coca–Cola employees, members of Local 901, that participated in the Coca–Cola employees' October 12th meeting were disciplined by the union. **Docket No. 37** at ¶¶ 49–50.

28. The following Local 901 members employed at Crowley attended the Coca–Cola employees' October 12 meeting for which plaintiffs were disciplined: Brenda Rivera, Daisy Feliciano, Aracelis Borrás, Israel Román, Solesnir González and José Grajales. With the exception of José Grajales, the union does not stipulate to having knowledge prior to March 2009 that all these employees participated in the October 12th meeting.

29. The following union members and shop stewards employed at UPS attended the Coca–Cola employees' October 12 meeting: Abigail Guzmán–Rosario and Hiram Castro. Local 901 does not stipulate to knowing this fact prior to March 2009. **Docket No. 37** at ¶¶ 52–53.

30. Edgardo Rivera, Local 901 steward for UPS, attended the strike between October 20 and 22, 2008. Angel Chico, a Local 901 member employed at Crowley, attended the strike on October 20, 2008. **Docket No. 37** at ¶ 54.

31. No disciplinary actions were taken against the Crowley or UPS union members. **Docket No. 37** at ¶ 54.

32. Germán Vázquez and other union officers have stated to Local 901 members, including those employed at Crowley, that plaintiffs and Quiara were disciplined by the union because they participated in an illegal strike and had made other statements at other times and places, all in violation of the Broad Order, Bylaws, and International Constitution. **Docket No. 37** at ¶ 55. Plaintiffs testified and assert that they did not participate in planning, organizing, or had any decision-making authority regarding the strike.[1]

33. Magríz attended the strike briefly because she had an appointment with the Department of Labor. She had filed a grievance on October 5th regarding the elections process and wanted to find out about the status of the challenge. Magríz' challenge was directed at the Board elected officials, the same officials that filed the union charges against plaintiffs. After she finished at the Department of Labor, she returned to the strike.

34. The charges filed against Magríz, Rivera (plaintiffs) and Quiara as well as the four men charged on September 1, 2009 are the only internal union charges that the union has filed against any of its members during the past three (3) years. **Docket No. 37** at ¶ 30.

35. The four newly-charged members complained to the NLRB. On November 3, 2009, the NLRB issued complaints, consolidating the cases of the three previously charged women members of the Teamsters Making the Difference slate with those of the newly-charged male members and supporters. **Docket No. 37** at ¶ 22.

36. The discipline imposed on plaintiffs and Quiara is the only discipline the union imposed on any of its member in the past three years. **Docket No. 37** at ¶ 34.

---

1. Plaintiffs contend that they were unaware that the strike they attended was illegal. Magríz testified that she did not see any Local 901 officials, representatives, or business agents at the strike, nor was there a sound system in place. This contrasts from her testimony regarding the strike she attended in Caguas Expressway Motors, where she stated to have witnessed the presence of Local 901 business agents and a sound system, as well as a Local 901, banner that was publicly displayed.

37. Plaintiffs have not paid the $10,000.00 fine imposed as sanction and Local 901 has not tried to collect it. **Docket No. 37 at ¶ 17.**

38. None of the charged slate members or observers were Coca–Cola employees. **Docket No. 37 at ¶ 23.**

39. The NLRB cases were tried on a stipulated record in December 2009 and January 2010. **Docket No. 37 at ¶ 24.**

40. Germán Vázquez was ordered to be suspended from membership and removed from union office by the International Union's General Executive Board on March 5, 2010. The suspension was based on a finding that Vázquez had embezzled $72,302.00. The sanction was imposed for a period of one year or until Vázquez makes full restitution for the amount embezzled. **Docket No. 37 at ¶ 25;** Exhibit 47,

41. When Germán Vázquez was removed from the Union, Alexis Rodríguez was appointed President.

42. Local 901 has not complied with the recommended Decision and Order of Administrative Law Judge Bruce Rosenstein, issued on April 16, 2010, which required the union to vacate and expunge all records of the disciplinary actions against Magríz, Rivera, and Quiara; reinstate them as members in good standing and as stewards; and rescind the fines. Instead, the Union filed exceptions to the recommended Decision and Order. **Docket No. 37 at ¶ 26.**

43. None of the Coca–Cola employees, including those who signed the strike petition sent to the Union on October 14, 2008 and led the strike, were subjected to internal union disciplinary proceedings for participating in the October 12th meeting or the strike. **Docket No. 37 at ¶ 27.**

44. *Solis v. Teamsters Local 901,* Case No. 09–1329(ADC), is a complaint the Secretary of the United States Department of Labor filed before this court against Local 901 regarding the election violations that plaintiffs complained about. **Docket No. 37 at ¶ 37.** The case has been subsequently settled. *See* Civ. Num. 09–1329, **Docket No. 24.** In the settlement agreement, Local 901 agreed to conduct new nominations and a new election, to be completed no later than October 7, 2011. *Id.*

45. Magríz received the Union's letter informing her of her suspension on March 12, 2009. She appealed said suspension to the Union's General President Jimmy Hoffa to which she has yet to receive a response, save a denial of the stay of the suspension imposed. The denial of the request for a stay was based on Magríz' failure to attend Local 901's internal proceedings. Plaintiffs requested reconsideration of the denial. See Exhibits 18, 19. The injunctive relief requested in the captioned complaint was filed one year after the denial of the stay.

46. From March 10, 2009, to February 6, 2010, Pepsi–Cola continued to deduct union dues from Rivera's pay. Since then, she has been making direct payments to the Union. **Docket No. 37 at ¶ 39.**

47. From March 10, 2009, to the present, Magríz has been periodically remitting to the Union the full membership dues. **Docket No. 37 at ¶ 40.**

48. To date, the union has not attempted to enforce its security clause on plaintiffs in their respective shops. **Docket No. 37 at ¶ 41.**

49. At all material times, plaintiffs had copies of the Union Bylaws and International Constitution. The NLRB certified compliance with the notification requirements of the Broad Order issued in 1991. **Docket No. 37 at ¶ 42.**

50. The nominations meeting for Local 901's next regular officer election will be held in September 2011, unless otherwise ordered by this Court. **Docket No. 37** at ¶ 57.

51. Local 901's next regular officer election will be held in October 2011, unless otherwise ordered by this Court. **Docket No. 37** at ¶ 58.

52. Plaintiffs filed unfair labor practice charges with the NLRB on July 31, 2009. The NLRB issued complaints and notified defendants Magríz and Quiara on that date. Rivera was notified on August 3. **Docket No. 37** at ¶ 59.

53. Magríz testified that she seeks reinstatement because she believes in her Union, wants to participate and contribute in its processes, which she believes should be more democratic. She also wants to participate as a delegate at the Local 901's convention. Further, if reinstated, Magríz wishes to run (for an elective position) in Local 901's October 2011 elections. Nominations for that election are in February of 2011.

54. Plaintiffs request reinstatement as soon as possible in order to be in good standing membership with the Union and be able to run and campaign for the Board election.

## II. THE LABOR–MANAGEMENT REPORTING AND DISCLOSURE ACT (LMRDA)

The LMRDA regulates the internal affairs of labor unions and protects the union member's right to participate in its union processes. "In enacting the LMRDA, Congress found that "it is essential that labor organizations ... and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations," and declared that the LMRDA was designed "to eliminate or prevent improper practices on the part of labor organizations." " *McCafferty v. Local 254, Service Employees Intern. Union, AFL–CIO*, 186 F.3d 52, 57 (1st Cir.1999), quoting 29 U.S.C. §§ 401(a), (c).

 Title I of the LMRDA provides union members a "Bill of Rights" which guarantees " 'equal rights and privileges' to nominate and vote for candidates, as well as freedom of speech and assembly and protection from improper discipline." *Molina v. Unión de Trabajadores de Muelles y Ramas Anexas, Local 1740, UTM–ILA*, 762 F.2d 166, 167 (1st Cir. 1985). "The typical Title I claim involves an allegation of unequal treatment among union members." *Id.* at 168, citing *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Thus, Title I claims, such as the one at bar, may be brought to federal court by its aggrieved union members in a private action. *Id.* at 167.[2]

 In addition to securing the equal right of union members, the LMRDA assures every member of a labor organization the "right to meet and assemble freely

---

**2.** This contrasts from those claims brought under Title IV of the LMRDA, which governs union officer elections and are enforced through the Secretary of the Department of Labor. Title IV seeks to protect union democracy by safeguarding the practice of holding free and democratic elections. *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 528, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); *Molina*, 762 F.2d at 167. Thus, save one exception, only the Secretary of Labor may file a Title IV action in federal court to set aside an election if it has already been held. See 29 U.S.C. § 483. The court notes that here, the Secretary of Labor filed a complaint before this court challenging Local 901's election, which has since settled.

with other members; and to express any views, arguments and opinions...." 29 U.S.C. § 411(a)(2). By the same token, the LMRDA prohibits a labor organization, or any of its officers, "to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions" of the LMRDA. 29 U.S.C. § 529. Thus, the LMRDA specifically protects all of its members from discipline made in retaliation or as a pretext for the exercise of protected rights.

## III. Preliminary Injunction Standard

■ When deciding a motion for preliminary injunction, a district court weighs four factors: (1) plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendant less than denying an injunction would burden plaintiffs; and (4) the effect, if any, on the public interest. *Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 11 (1st Cir.2008). The first factor, likelihood of success on the merits, is the "touchstone of the preliminary injunction inquiry." *Id.* (citations omitted). Courts have found that where the moving party cannot demonstrate a likelihood of success on the merits, the remaining factors become "matters of idle curiosity." *Id.* The LMRDA specifically provides for the filing of injunctive relief. 29 U.S.C. § 412.[3] With these precepts in mind, we now turn to the merits of plaintiff's request for injunctive relief under the LMRDA

## IV. Discussion

Plaintiffs contend that defendant denied them full and equal rights as members and elected shop stewards because of protected speech activities, in violation of sections 101(a)(1) and (a)(2) of Title I of the LMRDA, 29 U.S.C. §§ 411(a)(1) and (a)(2), as well as union membership, in violation of section 609, 29 U.S.C. § 529. **Docket No. 23** at 14–19. They aver that, since they belong to the opposing slate of "Teamsters Making A Difference" and challenged the October, 2008 elections before the Secretary of Labor, they suffered adverse, improper, and unequal disciplinary actions, that included a six (6) year expulsion, removal as shop steward, and a $10,000.00 fine. The sanctions were allegedly imposed for plaintiffs for attending and supporting a strike at Coca–Cola Bottling, a fellow shop. They aver that plaintiff's political opponents, the victorious incumbent candidates, imposed the charges and disciplinary sanctions against them in retaliation and to impede their participation in the upcoming elections. Therefore, they seek injunctive relief, reinstatement as shop stewards and members in good standing in order to be able to run for union office in the upcoming October 2011 elections.

Local 901, on the other hand, contends that plaintiffs are unable to prove the propriety of the injunctive relief requested. First, defendant states that the sanctions imposed upon plaintiffs obeyed legitimate business reasons caused by their infractions of the Union's By-Laws, Constitution and the Broad Order issued by the First Circuit Court of Appeals that regulates the participation of Local 901 officers, representative and agents during a strike. Defendant contends that, because of their positions as shop stewards, they are held to a higher degree of responsibility and loyalty to the union; therefore, the disci-

---

**3.** To that effect, defendant concedes that the LMRDA explicitly affords injunctive relief as an available and appropriate remedy for violations of rights protected under the act. **Docket No. 27–1** at 7.

plinary actions were justified. Further, defendant asserts that the sanctions have not adversely affected their employment or the terms and conditions of their employment with their respective employers. Last, they posit that defendant granted plaintiffs due process. However, plaintiffs' failure to present a defense and attend the union hearing made the unchallenged evidence presented therein, conclusive. Consequently, defendant maintains that it acted within its right to impose disciplinary sanctions upon its members; therefore, the request for injunctive relief is unwarranted. *See generally* **Docket No. 27–1.**

Upon careful consideration of the record, the court disagrees with defendant and finds that plaintiffs have met their burden of proof for this court to grant them injunctive relief. A brief discussion follows.

### (1) Likelihood of Success on the Merits

The evidence presented at the proceedings before this court shows that plaintiffs were elected shop stewards in their respective shops; that they belonged to "Teamsters Making a Difference", a political slate of opposition that protested the current union officers tactics and was striving for a more democratic union. Plaintiffs were actively seeking and running for union office against the incumbents. After the elections were held, plaintiffs disavowed and challenged the electoral process, wherein the victorious incumbent candidates remained in office.

Plaintiffs later received charges, imposed by the victorious incumbent Board, for participating and attending an illegal strike at a fellow shop, Coca–Cola Bottling. Consequently, plaintiffs were removed as stewards, their union membership was suspended for six (6) years; and, were imposed a $10,000.00 fine each. Plaintiffs allege that the charges and subsequent sanctions were made in retaliation for their having posed opposition to the victorious slate and for challenging the elections process.

First, plaintiffs attended the October 12, 2008 meeting, which rendered a unanimous strike vote for the Coca–Cola Bottling shop, in support of five discharged shop stewards. At the hearing, plaintiffs testified to the credence of this court that they believed the October 12th union meeting and the subsequent strike were supported by Local 901. In fact, the Administrative Law Judge's decision states, and this court agrees, that both, the meeting and strike were protected activities. From plaintiffs' respective testimonies, it appears they attended the strike in support of their fellow shop stewards at Coca–Cola Bottling, and had relied on the fact that the strike had already been endorsed by the Union with a unanimous strike vote. Further, none of the union officers ever conveyed to any of the plaintiffs that the union was not supporting the meeting or the strike. In addition, plaintiffs' activities and conduct did not violate any of the Union's "reasonable rules."[4] Last, the uncontested facts hold that none of the fellow union members who

---

**4.** Similarly, defendant's averment that plaintiffs violated the Broad Order is unpersuasive. This court finds, as the Administrative Law Judge did before it, that said order is inapplicable here. *See* **Docket No. 23–1** at 29: "I am hard pressed to find that Magríz, Quiara, and Rivera violated the "Broad Order" in any way, particularly when the Order is directed at the leadership of Local 901 who engage in strike misconduct. Indeed, it is particularly noted the respondent Union's By-Laws that specifically state, 'The shop stewards are not officers, nor agents of the Union.' Moreover, it is undisputed that when the respondent Union disciplined Magríz, Quiara, and Rivera on March 10, 2009, it knew that no violence or conduct in violation of the 'Broad Order' had occurred."

attended the so-called illegal strike were received similarly charged, nor were any members imposed similar disciplinary sanctions as plaintiffs.

■ Based on the determinations of fact highlighted above, it seems likely that plaintiffs will succeed in proving that they were disciplined in retaliation for protected activities under the LMRDA. It is likely that plaintiffs will succeed in establishing that the disciplinary measures taken against them, guised as sanctions for attending and supporting the Coca–Cola Bottling strike, were a mere ruse to thwart their opposition to the victorious incumbent slate and to thwart their participation in the upcoming elections and in the union's internal affairs. The disciplinary measures affected them both as elected shop stewards and as union members. As members, plaintiffs are entitled to an almost absolute freedom of speech. *Maceira v. Pagán,* 649 F.2d 8 (1st Cir.1981). The punitive measures taken against them certainly diminished plaintiffs' union rights, their status as members of the union, and their union representation as elected stewards. Thus, it is likely that plaintiffs, both as shop stewards and union members, may prove violations of sections 101(a)(1) and (2) and section 609 of the LMRDA.[5]

■ Further, the findings here are consistent with the findings, in its pertinent part, and the decision of the Administrative Law Judge. *See* **Docket No. 23–1.** The First Circuit Court of Appeals has noted that a favorable Administrative Law Judge decision in Section 10(j) proceedings "bolster" the moving parties' "likelihood of success" claim for injunctive relief. *See Pye v. Excel Case Ready,* 238 F.3d 69, 73 n. 8 (1st Cir.2001). This court embraces the same reasoning here. From the salient parts of the Administrative Law Judge's thorough and thoughtful opinion, this court highlights the following:

"The October 20–22 strike was caused by the unfair labor practices of Respondent Employer [Coca–Cola]. Therefore, the attendance at the October 12 assembly and the participation in the October 20–22 strike by Magríz, Quiara, and Rivera, is protected conduct under the Act. Here, imposing discipline and fines against union members who engage in protected concerted activities by their attendance at the October 12 assembly, and participating in an unfair labor practice strike, is conduct within the Act's protection since it impairs policies imbedded in the Act." **Docket No. 23–1** at 28–29.

"I further find that the disciplinary sanctions imposed on Magríz, Quiara, and Rivera are disparate when compared to the treatment received by other stewards and members who engaged in the same conduct. The record confirms that while Local 901 sent a letter to the Respondent Employer on October 20, stating it did not authorize or condone the strike, it never took any affirmative action to independently notify its members that it had withdrawn support for the strike at any time before or after the commencement of the strike. Thus, Local 901 never informed Magríz, Quiara, and Rivera that the strike was not supported by it, despite strike funds being requested and approved. In this regard, Local 901 knew on October 14 who had attended the October 12 assembly and later in October 2008 who had participated in the October 20–22 strike, yet it did not impose sanctions on any other shop stewards or union members for their attendance or participation at the assembly or the strike. I also note that none of the

---

5. Plaintiffs' suspension from membership is actionable under the three cited sections.

Their removal as shop stewards is proscribed under sections 101(a)(1) and (2).

other shop stewards were candidates in the internal union election held on October 3. Accordingly, I conclude that the actions of Local 901 in filing internal union charges and imposing sanctions against Magríz, Quiara, and Rivera was not only disparate but occurred in part because they comprised a slate of candidates that opposed the slate favored by Local 901." *Id.* at 29.

In light of the foregoing, plaintiffs have met their burden of establishing a likelihood of success in the merits of their claim.

### (2) Irreparable Harm

Plaintiffs center their claim and request for relief on the fact that they were unlawfully chastised by, and removed from the union, for voicing their stance, posing as political opponents to the incumbent slate, and challenging the union's internal elections where the incumbent slate was victorious. These are all actions protected by the LMRDA's Bill of Rights, which is precisely aimed at safeguarding freedoms analogous to those guarded by the First Amendment. It is well settled that the loss of First Amendment freedoms, and the loss of the freedom to express opposing views in a union context, constitutes irreparable harm. *See Maceira v. Pagán,* 649 F.2d at 18; *see also Vaquería Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 484 (1st Cir.2009) ("While certain constitutional violations are more likely to bring about irreparable harm, we have generally reserved this status for infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief.") (internal citations and quotations omitted).

Here, it is evident that plaintiffs have been thwarted from any attempt to voice opposition to the union or its victorious incumbent slate because they have been removed altogether from any and all participation in union activities and were each fined $10,000.00. These sanctions send a clear and compelling message to union members and stewards that taking a stance and voicing opposing opinions causes and carries dire consequences. Plaintiff Rivera testified, to the credence of the court, that the disciplinary sanctions imposed upon her have affected her shop because none of the members want to become stewards for fear of retaliation. Consequently, and as evidenced in Rivera's testimony, union members and stewards who may wish to express themselves, or aspire to hold office within the union, may fear reprisal in the form of expulsion and economic sanctions, similar to those taken upon plaintiffs. Similarly, Raymond Reyes–Rivera, Chief Shop Steward, testified that union members were surprised that the union took such actions against plaintiffs and that, since such sanctions were imposed, he has personally observed how other stewards have been afraid to assert rights. Therefore, maintaining the *status quo* of the union's actions will foreseeably suppress the voicing of opinions, which will, in turn, improperly encroach upon the very same rights the LMRDA seeks to protect. This is irreparable harm.

Defendant's argument that the Union's actions have not affected plaintiffs' employment status or the terms and conditions of their employment with their respective employers is unavailing. Irreparable harm stems, not only from the fact that plaintiffs themselves are thwarted from any expression in union affairs, but that fellow members and stewards may feel compelled to silence for fear of suffering plaintiffs' fate. Consequently, the court finds that the sanctions taken against plaintiffs have a

chilling effect on plaintiffs' right to express themselves in union affairs as well as union member's exercise of their right's of expression afforded under the LMRDA. *See Maceira v. Pagán,* 649 F.2d at 18 (finding that plaintiffs made showing of irreparably injury, by establishing a plausible claim of a "chilling effect" on the exercise of union member's right of expression.); *see also Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989) ("even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.") "The irreparable injury stems from 'the intangible nature or the benefits flowing from the exercise of those rights; and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.'" *United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 363 (6th Cir.1998), quoting *Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989). For the reasons expressed above, it is concluded that plaintiffs have established their burden of demonstrating irreparable harm.

### (3) Balance of Hardships

■ Upon finding both a likelihood of success in the merits of plaintiffs' claim and irreparable harm, the court now turns to the balance of hardships. The harms to plaintiffs' First Amendments rights must be weighed against the harm to defendant for granting the injunctive relief. In the present case, requiring plaintiffs' reinstatement as stewards and members of the union, and rescinding the $10,000.00 fine, would not bring any substantial harm upon defendant. First, the uncontested facts hold that defendant has not enforced restitution of the monetary fine imposed upon plaintiffs. Therefore, the rescission of the fine leaves defendant in the same economic state. However, as Magríz testified, even if she is reinstated in the union, if the economic sanction remains, she will be unable to pay the same and she will be unable to run for office because the Union's constitution establishes that no member can be elected to a position in the Union if they have pending debts with the Union.

Second, the court is unpersuaded by defendant's contention that the Union had no other option but to impose these disciplinary measures because plaintiffs were afforded their due process, but failed to present a defense at the Union's internal proceedings. It is clear from the evidence and testimonies presented at the evidentiary hearing before this court that plaintiffs feared the internal process would be vitiated because it was directed by the very same Board that plaintiffs were contesting for impairing the electoral process. November 15, 2010 hearing, **Exhibit 5.** Further, it is also clear that plaintiffs had requested and were denied postponement of the union's proceedings because they wanted time to prepare a defense and review the evidence against them. In addition, they informed the Board that they were unable to attend their hearings on those dates due to calendar conflicts. November 15, 2010 hearing, **Exhibit 7.** In the same letter to the Board, plaintiffs voiced their concerns that the proceedings would be tainted and that holding them separately, without the ability to review the evidence against them or time to prepare, would bar their ability to mount a defense and would render them defenseless. *Id.* Notwithstanding, defendant did not postpone the same, celebrated the hearings *in absentia,* and imposed the sanctions now challenged before this court.

Given plaintiffs' timely request to postpone the hearing and their open concerns of undergoing a process that, to them, seemed misdirected from its inception, the court is reluctant to tilt the balance of hardships in defendant's favor. Although mindful of the Union's concern that its internal processes and procedures be followed, the same is not absolute, especially in the face of processes that point to disparity and prejudice. The fact that the Board members, who stood to judge plaintiffs' charges at the internal hearing, were the same Board members that the plaintiffs challenged in the election process, turns the union's internal hearing into one that does not afford proper due process and does not guarantee a fair and impartial adjudication.[6] Therefore, in light of these particular circumstances, the manner in which the union was conducting its internal procedures and processes ran afoul of its own member's rights.

Third, defendant avers that, if the court issues injunctive relief, the same would relay the incorrect message to union stewards that may do as they please during strikes that are not approved by the union. The court, however, disagrees and is unpersuaded. From the record evidence and testimonies, it is clear that, as far as plaintiffs knew, the union: (1) was supporting the strike; (2) had endorsed the strike through a unanimous strike vote; and, (3) had even requested and gotten strike funds approved (November 15, 3010 hearing, **Exhibits 30, 31**). The uncontested facts similarly hold that the Union never informed plaintiffs that it had recanted its support, nor did it advise plaintiffs that they should not attend the strike. Here, the record is bereft of any evidence or activity that plaintiffs were intentionally insubordinate, sabotaged or subverted the union's policies, nor did they engage in activities opposed to the performance of their duties as stewards. *See Maceira v. Pagán,* 649 F.2d at 14. (. . . noting that "a union member, while acting as the union's agent, may not 'sabotage or subvert its policies in the name of free speech,' *id.,* or engage in 'activities diametrically opposed to the performance of his specified duties.' ") (citations and internal quotations omitted).

Therefore, defendant has been unable to convince the court that they would suffer a hardship sufficient to preclude this court from issuing injunctive relief. In contrast, plaintiffs did prove to the satisfaction of the court that failure to grant the relief requested indeed affects quintessential First Amendment and LMRDA rights, including participation in the union's internal affairs and the possibility of running for union office.[7] Plaintiffs also proved that failure to issue such relief would continue to thwart them from the exercise of their rights of expression, as well as those of other dissenting union members for fear of retaliation and sanctions akin to those imposed on plaintiffs. Additionally, plaintiffs proved that their removal as elected shop stewards denies fellow union members of their respective shops the right to have the union representative of their choice. *See Sheet Metal Workers' Intern. Ass'n v. Lynn,* 488 U.S. 347, 355, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989) ("The consequences of the removal of an elected official are much different [from those of the removal of an

---

**6.** The court further notes that plaintiffs requested a stay pending appeal which was denied and that plaintiffs requested reconsideration of said denial to no avail. November 15, 2010 hearing, **Exhibits 16, 17, 18.**

**7.** Plaintiff Magríz's testimony at the hearing was compelling in that she believes in the Union, wishes to participate in its processes, and wants to contribute in making it a more democratic Union.

appointed officer]. To begin with, when an elected official ... is removed from his post, the union members are denied the representative of their choice. Indeed, Lynn's removal deprived the membership of his leadership, knowledge, and advice at a critical time for the Local ... Furthermore, the potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged. Not only is the fired official likely to be chilled in the exercise of his own free speech rights, but so are the members who voted for him.") Thus, the court has little difficulty in concluding that the balance of hardships tips the balance decidedly in plaintiffs' favor.

### (4) Public Interest

██ Last, in light of the three factors above, the court similarly finds that "failure to issue the injunction would harm the public's interest in protecting First Amendment rights in order to allow the free flow of ideas." *United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d at 363. Thus, the public interest of preserving the right to freedom of expression will be served by granting the injunction. "When a constitutional violation is likely, moreover, the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights'" *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir.2010) (quoting *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998)).

### V. Conclusion

In light of the foregoing, Plaintiffs' motion for preliminary injunction (**Docket No. 23**) is **GRANTED. IT IS THERE-FORE ORDERED THAT INJUNCTIVE**

**RELIEF IS ISSUED AS TO THE FOL-LOWING:**

1. Defendant Local 901, its executive board, agents, representatives, employees, and successors are preliminarily enjoined from interfering in any way with the plaintiffs' exercise of the full membership rights of all members in good standing of Teamsters Local 901, specifically including the rights to attend and participate in all meetings of the union membership, to campaign and to be nominated for union office, and to have their names placed on ballots for union office, if nominated; and

2. Defendant Local 901, its executive board, agents, representatives, employees, and successors are further preliminarily enjoined from barring plaintiffs' names from nomination or election, based on the disciplinary actions against them, pending further order of this court; and

3. Defendant Local 901, its executive board, agents, representatives, employees, and successors are further preliminarily enjoined from enforcing or taking any action to collect the fines imposed upon plaintiffs, absent further order of this court; and

4. Defendant Local 901, its executive board, agents, representatives, employees, and successors are further enjoined from prohibiting or impeding plaintiffs' reinstatement to their positions as the duly elected stewards at their shops, pending further order of this court.

5. Defendant Local 901, its executive board, agents, representatives, employees, and successors are further preliminarily enjoined from imposing or threatening discipline against plaintiffs for exercising their LMRDA rights to campaign and run for union

office and to enforce their legal remedies challenging the actions of the Union under any laws;

**SO ORDERED.**